**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION AT GREENEVILLE**

| | | |
|---|---|---|
| In re | : | |
| | : | |
| **JACK ROBERT THACKER, JR.** | : | **Case No.  2:25-bk-50237-RRM** |
| **a/k/a JACK R. THACKER,** | : | **Chapter 11 – Subchapter V** |
| **a/k/a J. R. THACKER** | : | |
| | : | |
| **Debtor** | : | |

**MOTION TO SELL 4332 PRETORIA RUN**
**FREE AND CLEAR OF LIENS AND INTERESTS**

---

## NOTICE OF HEARING

**Notice is hereby given that:**

A hearing will be held on the **Motion To Sell 4332 Pretoria Run Free And Clear Of Liens and Interests** on **March 25, 2025, at 2:30p.m.**, in the United States Bankruptcy Court, James H. Quillen U.S. Courthouse, 220 W. Depot Street, Greeneville, Tennessee 37743.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you do not want the Court to grant the relief requested, you or your attorney must attend this hearing. If you do not attend the hearing, the Court may decide that you do not oppose the relief sought in the **Motion To Sell 4332 Pretoria Run Free And Clear Of Liens and Interests** and may enter an order granting that relief.

---

Pursuant to 11 U.S.C. § 363(f), Jack Robert Thacker, Jr. ("Thacker") requests authority to sell the real property known as 4332 Pretoria Run, Murfreesboro, Tennessee (the "Property"), free and clear of liens and interests. In support of his Motion, Thacker represents:

(1)    On March 6, 2025 (the "Petition Date"), Thacker filed his Voluntary Petition under Chapter 11 Subchapter V.

(2)    The Property is property of the estate. Thacker is the sole owner of the Property.

(3)     Prior to the Petition Date, Thacker entered into a Purchase and Sale Agreement with Doug Atkins and Heather Atkins ("Buyers") to sell the Property to them for $1,107,500.00. A copy of the Agreement is attached as Exhibit A. Because the closing was not going to occur on or before February 28, 2025, Thacker and the Buyers entered into an Amendment to extend the closing date to April 15, 2025. The Agreement has also been amended to provide Seller will pay $2,500.00 of Buyers' closing costs and to delete Karen Graham Thacker as a Seller, because she does not have any ownership interest in the Property.

(4)     SimpliHom and Meagan Miller listed the Property on behalf of Thacker. The listing agreement between Thacker and simpliHOM provides for payment of a six percent (6%) commission.

(5)     The Property has been actively marketed since January 31, 2025. Thacker believes the $1,107,500.00 sale price is reasonable market value for the Property. The Property is subject to a Deed of Trust held by First Horizon Bank. The unpaid debt to the Bank is approximately $516,000.00. The Bank's lien shall attach to the sale proceeds. The surplus proceeds shall be deposited to Thacker's Debtor-in-Possession account.

(6)     A sale is in the best interest of the estate because the Property is unoccupied, and expenses for insurance, mortgage payments and taxes will cease.

WHEREFORE, Thacker requests the Court to grant his Motion and enter an Order authorizing him to sell the Property to Doug Atkins and Heather Atkins for $1,107,500.00. Thacker also requests the Court to authorize payment of the First Horizon Bank claim and the six percent (6%) realtor commission at the closing.

*/s/ Maurice K. Guinn*
Maurice K. Guinn   (BPR # 000366)
Gentry, Tipton & McLemore, P.C.
P.O. Box 1990
Knoxville, Tennessee  37901
(865) 525-5300
Attorneys for Jack Robert Thacker, Jr.

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 11, 2025, the foregoing "**Motion To Sell 4332 Pretoria Run Free And Clear Of Liens And Interests**" and proposed "**Order Granting Motion To Sell 4332 Pretoria Run Free And Clear Of Liens And Interests**" were filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to Tiffany DiIorio, M. Aaron Spencer, and the United States Trustee.

Additionally, copies of the "**Motion To Sell 4332 Pretoria Run Free And Clear Of Liens And Interests**" and proposed "**Order Granting Motion To Sell 4332 Pretoria Run Free And Clear Of Liens And Interests**" were served on March 11, 2025, by first-class mail with sufficient postage prepaid in envelopes addressed as shown in the attachment hereto.

*/s/ Maurice K. Guinn*
Maurice K. Guinn

*10432 Motion to Sell Pretoria Run -3-7-25*

Label Matrix for local noticing
0649-2
Case 2:25-bk-50237-RRM
Eastern District of Tennessee
Greeneville
Tue Mar 11 10:35:32 EDT 2025

Arete Wealth
1115 W. Fulton Market, 3rd Floor
Chicago, IL 60607-1213

Barclays Bank Mastercard
P. O. Box 8801
Wilmington, DE 19899-8801

Blank Rome, LLP
130 North 18th Street
One Logan Square
Philadelphia, PA 19103-6998

Bradford Gucciardo, Esq.
Gucciardo Law Group, P.A.
8470 Enterprise Circle, Suite 110
Lakewood Ranch, FL 34202-4105

Capital One Visa
P. O. Box 30285
Salt Lake City, UT 84130-0285

Celia M. Howell Osborne
1252 Reed Hollow Road
Gate City, VA 24251-5449

Center Street Securities, Inc.
1115 W. Fulton Market, 3rd Floor
Chicago, IL 60607-1213

Citibank Mastercard
P. O. Box 6500
Sioux Falls, SD 57117-6500

Courtney M. Werring, Esq.
Meyer Wilson Co., LPA
305 W. Nationwide Blvd.
Columbus, OH 43215-2309

Darrell and Joan Vincent
1470 South Street
Fowler, IL 62338-2360

David Porteous
Faegre Drinker Biddle & Realth, LLP
P. O. Box 1450
Minneapolis, MN 55485-6193

Diane M. Dierking
3532 Stonecreek Circle
Jeffersonville, IN 47130-8049

Don, Jr. and Marla Lair
202 S. Main Street
P. O. Box 251
Payson, IL 62360-0251

Doug & Heather Atkins
c/o Brent Long
Compass Real Estate
410 Uptown Square
Murfreesboro, TN 37129-0575

FINRA
P. O. Box 418911
Boston, MA 02241-8911

First Horizon
P. O. Box 0054
Palatine, IL 60055-0054

(p)DOVENMUEHLE MORTGAGE
1 CORPORATE DRIVE SUITE 360
LAKE ZURICH IL 60047-8945

First Horizon Bank
C/O Brock and Scott, PLLC
Attorneys at Law
3825 Forrestgate Dr.
Winston-Salem, NC 27103-2930

Grant Dixon
P. O. Box 141756
Spokane Valley, WA 99214-1756

United States Attorney
Howard H. Baker, Jr. US Courthouse
800 Market Street, Suite 211
Knoxville, TN  37902

H. Joseph and Constance Schilmiller
6855 Stiller Road
Floyds Knobs, IN 47119-9207

Hans and Carol Bietsch
229 Wilbrook Road
Stratford, CT 06614-1981

Andrew Wesley Hogan
Brock & Scott, PLLC
3825 Forrestgate Drive
Winston-Salem, NC 27103-2930

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

James Wood
1250 Hancel Road
Equality, AL 36026-2637

Jeff Kennedy
1093 County Road 205
Giddings, TX 78942-5726

Jeffrey Erez, Esq & Michael Rapaport
EREX Law
One Downtown 1 SE
3rd Ave., Suite 1670
Miami, FL 33131

Jeffrey Semersheim
9304 South State Road 257
Stendal, IN 47585-8849

John English
2599 Rockville Center Parkway
Oceanside, NY 11572-1646

Joshua Mankini
4662 Long Branch Road
Spencer, TN   38585

Joy Necessary
1009 Blue Heron Way
Tarpon Springs, FL 34689-7142

Kalju Nekvasil, Esq.
Goodman & Nekvasil, P.A.
624 1st Ave. South
Saint Petersburg, FL 33701-4120

Kent and Nancy Crow
306 Country Lane
Mendon, IL 62351-1262

Mary Santana
13121 Avenida Santa Tecia
La Mirada, CA 90638-3213

Michael C. Bixby
Bixby Law PLLC
4300 Bayou Blvd, Suite 16
Pensacola, FL 32503-2671

Michael C. Bixby, Esq.
Bixby Law PLLC
1149 Creighton Road
Pensacola, FL 32504-7096

Michael Roden
2707 Cape Rock Pass
Prescott, AZ 86301-9604

Michael Siegforth
8843 East Yucca Blossom Dr
Gold Canyon, AZ 85118-7067

Peter Mougey, Esq.
Levin Papantonio
316 South Baylen St., Suite 600
Pensacola, FL 32502-5996

Socorro Galam
6675 Shemiran Street
La Verne, CA 91750-2390

M. Aaron Spencer
P. O. Box 900
Knoxville, TN 37901-0900

Terry and Sharon Vaughn
2024 North Arrowood Court
Quincy, IL 62305-8987

Jack Robert Thacker Jr.
2261 Bullock Hollow Road
Bristol, TN 37620-1135

The Roy W. Parker, Jr. Revocable Trust
641 Columbia Drive
Winter Park, FL 32789-1407

Thomas and Diann Elliott
1551 N. 900th Ave.
Liberty, IL 62347-4800

USF Credit Union
1545 Bluff City Highway
Bristol, TN 37620-6018

United States Trustee
800 Market Street, Suite 114
Howard H. Baker Jr. U.S. Courthouse
Knoxville, TN 37902-2303

WL Financial Advisors, LLC
951 Cumberland Street
Bristol, VA 24201-4103

William J. Layne
432 Corte Verde
Upland, CA 91786-5168

William Young, Esq.
Colling Gilbert Wright, PLLC
801 North Orange Ave., Suite 830
Orlando, FL 32801-5203

simpliHOM
836 N. Thompson Lane
Murfreesboro, TN 37129-4342

dotloop signature verification:

# C⊘MPASS

## PURCHASE AND SALE AGREEMENT

1   **1.** **Purchase and Sale.** For and in consideration of the mutual covenants herein and other good and valuable consideration,
2   the receipt and sufficiency of which is hereby acknowledged, the undersigned buyer
3   Doug Atkins and Heather Atkins _____ ("Buyer") agrees to buy and the
4   undersigned seller Robert Jack and Karen Graham Thacker _____ ("Seller")
5   agrees to sell all that tract or parcel of land, with such improvements as are located thereon, described as follows:
6   All that tract of land known as: 4332 Pretoria Run _____
7   (Address) Murfreesboro _____ (City), Tennessee, 37128 _____ (Zip), as recorded in
8   Rutherford _____ County Register of Deeds Office, _____ deed book(s), _____ page(s),
9   and/or _____ instrument number and as further described as:
10  _____ together with all
11  fixtures, landscaping, improvements, and appurtenances, all being hereinafter collectively referred to as the "Property."
12  **A. INCLUDED** as part of the Property (if present): all attached light fixtures and bulbs including ceiling fans;
13  permanently attached plate glass mirrors; heating, cooling, and plumbing fixtures and equipment; all doors, storm
14  doors and windows; all window treatments (e.g., shutters, blinds, shades, curtains, draperies) and hardware; all wall-
15  to-wall carpet; range; all built-in kitchen appliances; all bathroom fixtures and bathroom mirrors; all gas logs, fireplace
16  doors and attached screens; all security system components and controls; garage door opener(s) and all (at least 2 __ )
17  remote controls; any wired electric vehicle wall charging stations; swimming pool and its equipment; awnings;
18  permanently installed outdoor cooking grills; all landscaping and all outdoor lighting; mailbox(es); attached basketball
19  goals and backboards; TV mounting brackets (inclusive of wall mount and TV brackets) but excluding flat screen
20  TVs); antennae and satellite dishes (excluding components); central vacuum systems and attachments; and all
21  available keys, key fobs, access codes, master codes or other methods necessary for access to the Property, including
22  mailboxes and/or amenities.
23  **B.** Other items that **REMAIN** with the Property at no additional cost to Buyer:
24  all kitchen appliances
25
26  **C.** Items that **SHALL NOT REMAIN** with the Property:
27
28
29  **D. LEASED ITEMS:** Leased items that remain with the Property: (e.g., security systems, water softener systems, fuel
30  tank, etc.): _____ .
31  Buyer shall assume any and all lease payments as of Closing. If leases are not assumable, the balance shall be paid in
32  full by Seller at or before Closing.
33  ☑ Buyer does not wish to assume a leased item. **(THIS BOX MUST BE CHECKED IN ORDER FOR IT TO**
34  **BE A PART OF THIS AGREEMENT.)**
35  Buyer does not wish to assume Seller's current lease of _____ ;
36  therefore, Seller shall have said lease cancelled and leased items removed from Property prior to Closing.
37  **E. FUEL:** Fuel, if any, shall be adjusted and charged to Buyer and credited to Seller at Closing at current market prices.

38  **2.** **Purchase Price, Method of Payment and Closing Expenses.** Buyer warrants that, except as may be otherwise provided
39  herein, Buyer shall at Closing have sufficient cash to complete the purchase of the Property under the terms of
40  this Purchase and Sale Agreement (hereinafter "Agreement"). The purchase price to be paid is: $1,107,500 _____ ,
41  One million, one hundred seven thousand, five hundred dollars _____ U.S. Dollars, ("Purchase Price") which
42  shall be disbursed to Seller or Seller's Closing Agency by one of the following methods:
43  **i.** a Federal Reserve Bank wire transfer;
44  **ii.** a Cashier's Check issued by a financial institution as defined in 12 CFR § 229.2(i); OR
45  **iii.** other such form as is approved in writing by Seller.
46  **A. Financial Contingency – Loan(s) To Be Obtained.** This Agreement is conditioned upon Buyer's ability to obtain
47  a loan(s) in the principal amount up to _____ % of the Purchase Price listed above to be secured by a deed of trust
48  on the Property. "Ability to obtain" as used herein means that Buyer is qualified to receive the loan described herein

This form is copyrighted and may only be used in real estate transactions in which Brent Long _____ is involved as a Tennessee REALTORS® authorized
user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615- 321-1477.

**TENNESSEE REALTORS**   **Copyright 2015 © Tennessee Association of Realtors®**   **Version 01/01/2025**
**RF401 – Purchase and Sale Agreement, Page 1 of 11**



EXHIBIT

A

dotloop signature verification:

49  based upon Lender's customary and standard underwriting criteria. In consideration of Buyer, having acted in good
50  faith and in accordance with the terms below, being unable to obtain financing by the Closing Date, the sufficiency of
51  such consideration being hereby acknowledged, Buyer may terminate this Agreement by providing written notice via
52  the Notification form or equivalent written notice. Seller shall have the right to request any supporting documentation
53  regarding loan denial. Upon termination, Buyer is entitled to a refund of the Earnest Money/Trust Money. Lender is
54  defined herein as the financial institution funding the loan.
55  The loan shall be of the type selected below (**Select the appropriate box.**):
56  ☐  Conventional Loan  ☐  FHA Loan; attach addendum
57  ☐  VA Loan; attach addendum  ☐  Rural Development/USDA
58  ☑  Other_cash_____

59  Buyer may apply for a loan with different terms and conditions and also Close the transaction provided all other terms
60  and conditions of this Agreement are fulfilled, and the new loan does not increase any costs charged to Seller. Buyer
61  shall be obligated to Close this transaction if Buyer has the ability to obtain a loan with terms as described herein
62  and/or any other loan for which Buyer has applied and been approved.

63  **Loan Obligations**: *__The Buyer agrees and/or certifies as follows:__*
64  (1)  Within three (3) days after the Binding Agreement Date, Buyer shall make application for the loan and shall
65  pay for credit report. Buyer shall immediately notify Seller or Seller's representative of having applied for
66  the loan and provide Lender's name and contact information, and that Buyer has instructed Lender to order
67  credit report. Such certifications shall be made via the Notification form or equivalent written notice;
68  (2)  Within fourteen (14) days after the Binding Agreement Date, Buyer shall warrant and represent to Seller via
69  the Notification form or equivalent written notice that:
70  a.  Buyer has secured evidence of hazard insurance which shall be effective at Closing and Buyer shall
71  notify Seller of the name of the hazard insurance company;
72  b.  Buyer has notified Lender of an Intent to Proceed and has available funds to Close per the signed
73  Loan Estimate; and
74  c.  Buyer has requested that the appraisal be ordered and affirms that the appraisal fee has been paid.
75  (3)  Buyer shall pursue qualification for and approval of the loan diligently and in good faith;
76  (4)  Buyer shall continually and immediately provide requested documentation to Lender and/or loan originator;
77  (5)  Unless otherwise stated in this Agreement, Buyer represents that this loan is not contingent upon the lease or
78  sale of any other real property and the same shall not be used as the basis for loan denial; and
79  (6)  Buyer shall not intentionally make any material changes in Buyer's financial condition which would
80  adversely affect Buyer's ability to obtain the Primary Loan or any other loan referenced herein.
81  Should Buyer fail to timely comply with section 2.A.(1) and/or 2.A.(2) above **and provide notice as required**, Seller
82  may make written demand for compliance via the Notification form or equivalent written notice. If Buyer does not
83  furnish Seller the requested documentation within two (2) days after such demand for compliance, Buyer shall be
84  considered in default and Seller's obligation to sell is terminated.
85  ☐  **B.**  **Financing Contingency Waived (THIS BOX MUST BE CHECKED TO BE PART OF THIS AGREEMENT.)**
86  (e.g. "All Cash", etc.): Buyer's obligation to close shall not be subject to any financial contingency. Buyer reserves
87  the right to obtain a loan. Buyer shall furnish proof of available funds to close in the following manner:
88  _____ (e.g. bank statement, Lender's commitment letter) within five (5) days
89  after Binding Agreement Date. Should Buyer fail to do so, Seller may make written demand for compliance via the
90  Notification form or equivalent written notice. If Buyer does not furnish Seller with the requested notice within two
91  (2) days after such demand for compliance, Buyer shall be considered in default and Seller's obligation to sell is
92  terminated. Failure to Close due to lack of funds shall be considered default by Buyer.
93  In the event this Agreement is contingent upon an appraisal (See Section 2.C. below), Buyer must order the appraisal
94  and provide Seller with the name and telephone number of the appraisal company and proof that appraisal was ordered
95  within five (5) days of the Binding Agreement Date. Should Buyer fail to do so, Seller may make written demand for
96  compliance via the Notification form or equivalent written notice. If Buyer does not furnish Seller with the requested
97  notice within two (2) days after such demand for compliance, Buyer shall be considered in default and Seller's
98  obligation to sell is terminated.
99  **C.**  **Appraisal (Select either 1 or 2 below. The sections not checked are not a part of this Agreement).**
100  ☐  **1.**  This Agreement **IS NOT** contingent upon the appraised value either equaling or exceeding the agreed upon
101  Purchase Price. Thereafter, failure to appraise shall not be used as the basis for loan denial or termination of
102  Agreement.

This form is copyrighted and may only be used in real estate transactions in which Brent Long_____ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615- 321-1477.

TENNESSEE REALTORS  **Copyright 2015 © Tennessee Association of Realtors®**  **Version 01/01/2025**
**RF401 – Purchase and Sale Agreement, Page 2 of 11**

dotloop signature verification: dtlp.us/R8tY-16ZK-RzJC

| 103 | ☑ 2. | This Agreement **IS CONTINGENT** upon the appraised value either equaling or exceeding the agreed |
| 104 | | upon Purchase Price. If the appraised value is equal to or exceeds Purchase Price, this contingency is satisfied. |
| 105 | | In consideration of Buyer having conducted an appraisal, the sufficiency of such consideration being hereby |
| 106 | | acknowledged, if the appraised value of the Property does not equal or exceed the Purchase Price, Buyer |
| 107 | | shall promptly notify the Seller via the Notification form or equivalent written notice.  Buyer shall then have |
| 108 | | three (3) days to either: |

<br>

109                  1.   waive the appraisal contingency via the Notification form or equivalent written notice
110                     **OR**
111                  2.   terminate the Agreement by giving notice to Seller via the Notification Form or equivalent written
112                      notice.  Upon timely termination, Buyer is entitled to a refund of the Earnest Money/Trust Money.
113         In the event Buyer fails to either waive the appraisal contingency or terminate the Agreement as set forth
114         above, this contingency shall be deemed satisfied. Thereafter, failure to appraise shall not be used as the basis
115         for loan denial or termination of Agreement. Seller shall have the right to request any supporting
116         documentation showing appraised value did not equal or exceed the agreed upon Purchase Price.

117   **D.  Closing Expenses.**

118     **1.  Seller Expenses.**  Seller shall pay all existing loans and/or liens affecting the Property, including all penalties,
119         release preparation costs, and applicable recording costs; any accrued and/or outstanding association dues or fees;
120         fee (if any) to obtain lien payoff/estoppel letters/statement of accounts from any and all associations, property
121         management companies, mortgage holders or other liens affecting the Property; Seller's closing fee, document
122         preparation fee and/or attorney's fees; fee for preparation of deed; notary fee on deed; and financial institution
123         (Bank, Credit Union, etc.) wire transfer fee or commercial courier service fee related to the disbursement of any
124         lien payoff(s). Seller additionally agrees to permit any withholdings and/or to pay any additional sum due as is
125         required under the Foreign Investment in Real Property Tax Act.  Failure to do so shall constitute a default by
126         Seller.

127         **In the event Seller is subject to Tax Withholding as required by the Foreign Investment in Real Property**
128         **Tax Act, (hereinafter "FIRPTA"), Seller additionally agrees that such Tax Withholding must be collected**
129         **from Seller by Buyer's Closing Agent at the time of Closing**. In the event Seller is not subject to FIRPTA,
130         Seller shall be required as a condition of Closing to sign appropriate affidavits certifying that Seller is not subject
131         to FIRPTA. *It is Seller's responsibility to seek independent tax advice or counsel prior to the Closing Date*
132         *regarding such tax matters.*

133     **2.  Buyer Expenses.**  Buyer shall pay all transfer taxes and recording fees on deed of conveyance and deed of trust;
134         Buyer's closing fee, document preparation fee and/or attorney's fees; preparation of note, deed of trust, and other
135         loan documents; mortgage loan inspection or boundary line survey; credit report; required premiums for private
136         mortgage, hazard and flood insurance; required reserved deposits for insurance premiums and taxes; prepaid
137         interest; re-inspection fees pursuant to appraisal; insured Closing Protection Letter; association fees as stated
138         within section 4.F.; and any costs incident to obtaining and closing a loan, including but not limited to: appraisal,
139         origination, discount points, application, commitment, underwriting, document review, courier, assignment,
140         photo, tax service, notary fees, and any wire fee or other charge imposed for the disbursement of the Seller's
141         proceeds according to the terms of this Agreement.

142     **3.  Title Expenses**. Cost of title search, mortgagee's policy and owner's policy (rates to be as filed with the
143         Tennessee Department of Commerce and Insurance) shall be paid as follows:
144         buyer to pay _____.
145         Simultaneous issue rates shall apply.  It is the Buyer's responsibility to seek independent advice or counsel prior
146         to Closing from Buyer's Closing Agency regarding the availability and coverage provided under an American
147         Land Title Association Standard Owner's Insurance Policy and, if available, a Homeowner's Title Insurance
148         Policy which provides additional coverage.

149   **Not all of the above items (Seller Expenses, Buyer Expenses and Title Expenses) are applicable to every transaction**
150   **and may be modified as follows:**

151
152
153
154

155   **Closing Agency for Buyer & Contact Information:** Tri Star Title and Escrow _____

156   _____

157   **Closing Agency for Seller & Contact Information:** Closed Title - Kaylie Joiner _____

This form is copyrighted and may only be used in real estate transactions in which Brent Long_____ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615- 321-1477.

TENNESSEE
REALTORS

**Copyright 2015 © Tennessee Association of Realtors®**
**RF401 – Purchase and Sale Agreement, Page 3 of 11**

**Version 01/01/2025**

dotloop signature verification:

158 _____

159 **3.** **Earnest Money/Trust Money**. Buyer has paid or shall pay within 5_____ days after the Binding Agreement Date to

160 Tri Star Title and Escrow _____ (name of Holder) ("Holder") located at

161 1535 W Northfield Blvd Murfreesboro, TN 37129 _____ (address of Holder), an Earnest

162 Money/Trust Money deposit of $10,000_____ by check (OR

163 em check _____) ("Earnest Money/Trust Money").

    **A.** **Failure to Receive Earnest Money/Trust Money.** In the event Earnest Money/Trust Money (if applicable) is not
165 timely received by Holder or Earnest Money/Trust Money check or other instrument is not honored for any reason by
166 the bank upon which it is drawn, Holder shall promptly notify Buyer and Seller of the Buyer's failure to deposit the
167 agreed upon Earnest Money/Trust Money. Buyer shall then have one (1) day to deliver Earnest Money/Trust Money
168 in immediately available funds to Holder. In the event Buyer does not deliver such funds, Buyer is in default and
169 Seller shall have the right to terminate this Agreement by delivering to Buyer or Buyer's representative written notice
170 via the Notification form or equivalent written notice. In the event Buyer delivers the Earnest Money/Trust Money in
171 immediately available funds to Holder before Seller elects to terminate, Seller shall be deemed to have waived Seller's
172 right to terminate, and the Agreement shall remain in full force and effect.

    **B.** **Handling of Earnest Money/Trust Money upon Receipt by Holder.** Earnest Money/Trust Money (if applicable) is
174 to be deposited promptly after the Binding Agreement Date or the agreed upon delivery date in this Earnest
175 Money/Trust Money section or as specified in the Special Stipulations section contained herein. Holder shall disburse
176 Earnest Money/Trust Money only as follows:

177         (a) at Closing to be applied as a credit toward Buyer's Purchase Price;

178         (b) upon a written agreement signed by all parties having an interest in the funds;

179         (c) upon order of a court or arbitrator having jurisdiction over any dispute involving the Earnest
180             Money/Trust Money;

181         (d) upon a reasonable interpretation of the Agreement; or

182         (e) upon the filing of an interpleader action with payment to be made to the clerk of the court having
183             jurisdiction over the matter.

184 Holder shall be reimbursed for, and may deduct from any funds interpleaded, its costs and expenses, including
185 reasonable attorney's fees. The prevailing party in the interpleader action shall be entitled to collect from the other
186 party the costs and expenses reimbursed to Holder. No party shall seek damages from Holder (nor shall Holder be
187 liable for the same) for any matter arising out of or related to the performance of Holder's duties under this Earnest
188 Money/Trust Money section. Earnest Money/Trust Money shall not be disbursed prior to fourteen (14) days after
189 deposit unless written evidence of clearance by bank is provided.

190 **4.** **Closing, Prorations, Special Assessments and Warranties Transfer.**

    **A.** **Closing Date**. This transaction shall be closed ("Closed") (evidenced by delivery of warranty deed and payment of
192 Purchase Price, the "Closing"), and this Agreement shall expire, at 11:59 p.m. local time on the 28th____ day of
193 February_____,2025_____ ("Closing Date"), or on such earlier date as may be agreed to by the
194 parties in writing. Such expiration does not extinguish a party's right to pursue remedies in the event of default. Any
195 extension of this date must be agreed to by the parties in writing via the Closing Date/Possession Date Amendment or
196 equivalent written agreement.

197     **1.** **Possession.** Possession of the Property is to be given (**Select the appropriate boxes below. Unselected items**
198       **shall not be part of this Agreement**):

199       ☑ at Closing as evidenced by delivery of warranty deed and payment of Purchase Price;

200     **OR**

201       ☐ as agreed in the attached and incorporated Temporary Occupancy Agreement;

    **B.** **Prorations**. Real estate taxes, rents, dues, maintenance fees, and association fees on said Property for the calendar
203 year in which the sale is Closed shall be prorated as of the Closing Date. If the final tax rate for the current year has
204 not been set by the Taxing Authority at time of Closing, the tax rate and property assessment for the immediately
205 preceding calendar year shall be utilized for calculation of the tax proration. In the event of a change or reassessment
206 of taxes for the calendar year after Closing, the parties agree to pay their recalculated share. Real estate taxes, rents,
207 dues, maintenance fees, and association fees for prior years and rollback taxes, if any, shall be paid by Seller.

    **C.** **Greenbelt.** If property is currently classified by the property tax assessor as "Greenbelt" (minimum of 15 acres or
209 otherwise qualifies), does the Buyer intend to keep the property in the Greenbelt? (**Select the appropriate boxes**
210 **below. Unselected items shall not be part of this Agreement**):

211     ☐ Buyer intends to maintain the property's Greenbelt classification and acknowledges that it is Buyer's
212       responsibility to make timely and proper application to insure such status. Buyer's failure to timely and properly

This form is copyrighted and may only be used in real estate transactions in which Brent Long_____ is involved as a Tennessee REALTORS® authorized
user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615- 321-1477.

dotloop signature verification: dtlp.us/K6YV-t024-R260

213  make application shall result in the assessment of rollback taxes for which Buyer shall be obligated to pay.  Buyer
214  should consult the tax assessor for the county where the property is located prior to making this offer to verify
215  that their intended use shall qualify for Greenbelt classification.

216  ☐  Buyer does not intend to maintain the property's Greenbelt status and rollback taxes shall be payable by the Seller
217  at time of closing.

218  D.  **Special Assessments.**  Special assessments approved or levied prior to the Closing Date shall be paid by the Seller at
219  or prior to Closing unless otherwise agreed as follows:
220  _____

221  E.  **Warranties Transfer.**  Seller, at the option of Buyer and at Buyer's cost, agrees to transfer Seller's interest in any
222  manufacturer's warranties, service contracts, termite bond or treatment guarantee and/or similar warranties which by
223  their terms may be transferable to Buyer.

224  F.  **Association Fees.**  Buyer shall be responsible for all homeowner or condominium association transfer fees, related
225  administration fees (not including statement of accounts), capital expenditures/contributions incurred due to the
226  transfer of Property and/or like expenses which are required by the association, property management company and/or
227  the bylaws, declarations or covenants for the Property (unless otherwise specifically addressed herein and/or unless
228  specifically chargeable to Seller under applicable bylaws, declarations, and/or neighborhood covenants).

229  5.  **Title and Conveyance.**
230  A.  Seller warrants that at the time of Closing, Seller shall convey or cause to be conveyed to Buyer or Buyer's assign(s)
231  good and marketable title to said Property by general warranty deed, subject only to:
232  (1)  zoning;
233  (2)  setback requirements and general utility, sewer, and drainage easements of record on the Binding Agreement
234  Date upon which the improvements do not encroach;
235  (3)  subdivision and/or condominium declarations, covenants, restrictions, and easements of record on the
236  Binding Agreement Date; and
237  (4)  leases and other encumbrances specified in this Agreement.
238  If title examination, closing or loan survey pursuant to Tenn. Code Ann. § 62-18-126, boundary line survey, or other
239  information discloses material defects, Buyer may, at Buyer's discretion:
240  (1)  accept the Property with the defects **OR**
241  (2)  require Seller to remedy such defects prior to the Closing Date. Buyer shall provide Seller with written notice
242  of such defects via the Notification form or equivalent written notice.  If defects are not remedied prior to
243  Closing Date, Buyer and Seller may elect to extend the Closing Date by mutual written agreement evidenced
244  by the Closing Date/Possession Amendment form or other written equivalent.  If defects are not remedied by
245  the Closing Date or any mutually agreed upon extension thereof, this Agreement shall terminate, and Buyer
246  shall be entitled to refund of Earnest Money/Trust Money.
247  Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in
248  Tennessee shall insure at its regular rates, subject only to standard exceptions.  The title search or abstract used for the
249  purpose of evidencing good and marketable title must be acceptable to the title insurance agent and the issuing title
250  insurance company.  Seller agrees to execute such appropriate affidavits and instruments as may be required by the
251  issuing title insurance company.

252  B.  Buyer warrants Buyer has reviewed Tenn. Code Ann. Title 66, Chapter 2, Part 3 and is not a prohibited foreign party
253  or prohibited foreign-party controlled business prohibited from purchasing agricultural or non-agricultural land in
254  Tennessee pursuant to the statute.

255  C.  **Deed.**  Name(s) on Deed to be: Doug and Heather Atkins                                                    It
256  is the Buyer's responsibility to consult the closing agency or attorney prior to Closing as to the manner in which Buyer
257  holds title.

258  D.  **Association Lien Payoff.**  In the event the Property is subject to mandatory association assessments or other fees,
259  which may impose a lien, Seller shall cause to be delivered to Buyer or Buyer's Closing Agent not later than seven
260  (7) days before Closing a lien payoff, estoppel letter or a statement of account reflecting that the account relating to
261  the Property is current or setting forth the sum due to bring the account current.

262  6.  **Public Water or Public Sewer Systems**
263  In the event it is discovered that Public Water or Public Sewer System is accessible to the Property and connection to the
264  Property is required by a governmental agency/authority or Lender, Buyer shall promptly notify the Seller via the
265  Notification form or equivalent written notice. Seller and Buyer shall have five (5) days following such written notice but
266  not later than the Closing Date to negotiate in good faith the payment for the cost and the connection to the Public Water

This form is copyrighted and may only be used in real estate transactions in which Brent Long_____ is involved as a Tennessee REALTORS® authorized
user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615- 321-1477.

267   or Public Sewer System. In the event Seller and Buyer do not reach a mutual written agreement for the payment of such
268   cost or a mutually agreeable written extension of such time period as evidenced in an Amendment to this Agreement signed
269   by both parties within such period of time, this Agreement is hereby terminated. If terminated the Buyer is entitled to a
270   refund of the Earnest Money/Trust Money.

271   **7. Lead-Based Paint Disclosure (Select the appropriate box.)**
272   ☑ does not apply.   ☐ does apply (Property built prior to 1978 – see attached Lead-Based Paint Disclosure)

273   **8. Inspections.**
274   **A. Buyer's Right to Make Inspection(s). All inspections/reports, including but not limited to the home inspection**
275   **report, those required/recommended in the home inspection report, Wood Destroying Insect Infestation**
276   **Inspection Report, septic inspection and well water test, are to be made at Buyer's expense, unless otherwise**
277   **stipulated in this Agreement.** The parties hereto agree that in the event Buyer shall elect to contract with a third-
278   party inspector to obtain a "Home Inspection" as defined by Tennessee law, said inspection shall be conducted by a
279   licensed Home Inspector. However, nothing in this section shall preclude Buyer from conducting any inspections on
280   Buyer's own behalf, nor shall it preclude Buyer from retaining a qualified (and if required by law, licensed)
281   professional to conduct inspections of particular systems or issues within such professional's expertise or licensure,
282   including but not limited to inspection of the heating/cooling systems, electrical systems, foundation, etc., so long as
283   said professional is not in violation of Tenn. Code Ann. § 62-6-301, et seq. as may be amended. **Seller shall cause**
284   **all utility services and any pool, spa, and similar items to be operational so that Buyer may complete all**
285   **inspections and tests under this Agreement.** Buyer agrees to indemnify Seller from the acts of Buyer, Buyer's
286   inspectors and/or representatives in exercising Buyer's rights under this Purchase and Sale Agreement. Buyer's
287   obligations to indemnify Seller shall also survive the termination of this Agreement by either party, which shall remain
288   enforceable.
289   **Buyer waives any objections to matters of purely cosmetic nature (e.g. decorative, color or finish items)**
290   **disclosed by inspection. Buyer has no right to require repairs or alterations purely to meet current building**
291   **codes, unless required to do so by governmental authorities.**

292   **B. Initial Inspections.** Buyer and/or Buyer's inspectors/representatives shall have the right and responsibility to enter
293   the Property during normal business hours, for the purpose of making inspections and/or tests of the Property. Buyer
294   and/or Buyer's inspectors/representatives shall have the right to perform a visual analysis of the condition of the
295   Property, any reasonably accessible installed components, the operation of the Property's systems including but not
296   limited to the following components: heating systems, cooling systems, electrical systems, plumbing systems,
297   structural components, foundations, roof coverings, exterior and interior components, any other site aspects that affect
298   the Property, and environmental issues (e.g. radon, mold, asbestos, etc.).

299   **C. Wood Destroying Insect Infestation Inspection Report.** If desired by Buyer or required by Buyer's Lender, it shall
300   be Buyer's responsibility to obtain *at Buyer's expense* a Wood Destroying Insect Infestation Inspection Report (the
301   "Report"), which shall be made by a Tennessee licensed and chartered pest control operator. Requests for treatment
302   or for repair of damage, if any, should be addressed in the Buyer's request for repairs pursuant to Subsection 8.D.,
303   Buyer's Inspection and Resolution below.
304   **D. Buyer's Inspection and Resolution.** Within 10_____ days after the Binding Agreement Date ("Inspection Period"),
305   Buyer shall cause to be conducted any inspection provided for herein, including but not limited to the Wood
306   Destroying Insect Infestation Inspection Report **AND** shall provide written notice of such to Seller as described below.
307   *In the event Buyer fails to timely make such inspections and respond within said timeframe as described herein,*
308   *the Buyer shall have forfeited any rights provided under this Section 8, and in such case shall accept the Property*
309   *in its current condition, normal wear and tear excepted.*

310   **In said notice Buyer shall either:**
311   (1) In consideration of Buyer having conducted Buyer's good faith inspections as provided for herein, the
312   sufficiency of such consideration being hereby acknowledged, Buyer shall furnish Seller with a list of written
313   specified objections and immediately terminate this Agreement via the Notification form or equivalent
314   written notice. All Earnest Money/Trust Money shall be returned to Buyer upon termination.
315   **OR**
316   (2) accept the Property in its present "AS IS" condition with any and all faults and no warranties expressed or
317   implied via the Notification form or equivalent written notice. Seller has no obligation to make repairs.
318   **OR**
319   (3) furnish Seller a written list of items which Buyer requires to be repaired and/or replaced with like quality or
320   value in a professional and workmanlike manner via the Repair/Replacement Proposal or equivalent written
321   notice. Seller shall have the right to request any supporting documentation that substantiates any item listed.

This form is copyrighted and may only be used in real estate transactions in which Brent Long_____ is involved as a Tennessee REALTORS® authorized
user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615- 321-1477.



**TENNESSEE**
**REALTORS**
**Copyright 2015 © Tennessee Association of Realtors®**
**RF401 – Purchase and Sale Agreement, Page 6 of 11**
**Version 01/01/2025**

322  Resolution Period. Seller and Buyer shall then have a period of 3_____ days following receipt of
323  the above stated written list ("Resolution Period") to reach a mutual agreement as to the items to be
324  repaired or replaced with like quality or value by Seller, which shall be evidenced by the Repair /
325  Replacement Amendment or written equivalent(s). The receipt by Seller of the above stated written
326  list or Repair/Replacement Proposal marks the end of the Inspection Period and the beginning of
327  the Resolution Period. *The parties agree to negotiate repairs in good faith during the Resolution*
328  *Period.* Buyer reserves the right to withdraw the above stated written list or Repair/Replacement
329  Proposal during the Resolution Period via the Notification form or equivalent written notice. Upon
330  withdrawal, Buyer shall be deemed to have accepted the Property in its present "AS IS" condition
331  and Seller shall have no obligation to make repairs.

332  **This Agreement shall terminate at the end of the Resolution Period with a refund of**
333  **Earnest Money/Trust Money to the Buyer, unless one of the following occurs:**
334  (1) Seller and Buyer enter into a Repair/Replacement Amendment or written equivalent(s);
335  OR
336  (2) Buyer provides written notice to Seller that Buyer is accepting Property "AS IS";
337  OR
338  (3) Seller and Buyer enter into a written amendment extending the Resolution Period.
339  ☐  Buyer waives the option to request items to be repaired and/or replaced under D (3) above and there shall be no
340  Resolution Period. Buyer retains the right to perform Buyer's Inspections and to timely furnish Seller with a list
341  of written specified objections and immediately terminate this Agreement as provided in D (1) above or accept
342  the Property in its present AS IS condition as provided under D (2) above.
343  ☐ **E.  Waiver of All Inspections. THIS BOX MUST BE CHECKED TO BE PART OF THIS AGREEMENT.**
344  **Buyer, having been advised of the benefits of inspections, waives any and all Inspection Rights under this**
345  **Section 8 (including but not limited to the Wood Destroying Insect Infestation Inspection Report).**

346  9.  **Completion of Repairs.**  In the event a Completion of Repairs Deadline is not established in a Repair/ Replacement
347  Amendment or written equivalent, the Buyer shall use the Final Inspection to determine that all repairs/ replacements
348  agreed to during the Resolution Period, if any, have been completed.

349  In the event repairs have not been completed by the established deadline, Seller shall be considered in default of this
350  Agreement and Buyer may terminate via the Notification Form or written equivalent. Upon termination, Earnest Money/
351  Trust Money shall be returned to Buyer.

352  10. **Final Inspection.**  Buyer and/or Buyer's inspectors/representatives shall have the right to conduct a final inspection of
353  Property on the Closing Date or within 1___ day(s) prior to the Closing Date only to confirm Property is in the same or
354  better condition as it was on the Binding Agreement Date, normal wear and tear excepted.  Property shall remain in such
355  condition until Closing at Seller's expense.

356  **Closing of this sale constitutes acceptance of Property in its condition as of the time of Closing, unless otherwise**
357  **mutually agreed upon in writing.**

358  11. **Buyer's Additional Due Diligence Options.**  If any of the matters below are of concern to Buyer, Buyer should address
359  the concern by specific contingency in the Special Stipulations Section of this Agreement.
360  A.  **Survey and Flood Certification.**  Survey Work and Flood Certifications are the best means of identifying boundary
361  lines and/or encroachments and easements or flood zone classifications.  Buyer may obtain a Mortgage Inspection or
362  Boundary Line Survey and Flood Zone Certifications.
363  B.  **Insurability.**  Many different issues can affect the insurability and the rates of insurance for property.  These include
364  factors such as changes in the Flood Zone Certifications, changes to the earthquake zones maps, the insurability of the
365  buyer, and previous claims made on the Property.  It is the right and responsibility of Buyer to determine the
366  insurability, coverage and the cost of insuring the Property.  It is also the responsibility of Buyer to determine whether
367  any exclusions shall apply to the insurability of said Property.
368  C.  **Water Supply.**  The system may or may not meet state and local requirements.  It is the right and responsibility of
369  Buyer to determine the compliance of the system with state and local requirements.  [For additional information on
370  this subject, request the "Water Supply and Waste Disposal Notification" form.]
371  D.  **Waste Disposal.**  The system may or may not meet state and local requirements.  It is the right and responsibility of
372  Buyer to determine the compliance of the system with state and local requirements.  In addition, Buyer may, for a fee,
373  obtain a septic system inspection letter from the Tennessee Department of Environment and Conservation, Division

This form is copyrighted and may only be used in real estate transactions in which Brent Long_____ is involved as a Tennessee REALTORS® authorized
user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615- 321-1477.

TENNESSEE
REALTORS    **Copyright 2015 © Tennessee Association of Realtors®**    **Version 01/01/2025**
            **RF401 – Purchase and Sale Agreement, Page 7 of 11**

374    of Ground Water Protection. [For additional information on this subject, request the "Water Supply and Waste
375    Disposal Notification" form.]

376    **E. Title Exceptions.** At Closing, the general warranty deed shall be subject to subdivision and/or condominium
377    declarations, covenants, restrictions and easements of record, which may impose obligations and may limit the use of
378    the Property by Buyer.

379 **12. Disclaimer.** It is understood and agreed that the real estate firms and real estate licensee(s) representing or assisting Seller
380    and/or Buyer and their brokers (collectively referred to as "Brokers") are not parties to this Agreement and do not have or
381    assume liability for the performance or nonperformance of Seller or Buyer. Buyer and Seller agree that Brokers shall not
382    be responsible for any of the following, including but not limited to, those matters which could have been revealed through
383    a survey, flood certification, title search or inspection of the Property; the insurability of the Property or cost to insure the
384    Property; for the condition of the Property, any portion thereof, or any item therein; for any geological issues present on
385    the Property; for any issues arising out of the failure to physically inspect Property prior to entering into this Agreement
386    and/or Closing; for the necessity or cost of any repairs to the Property; for hazardous or toxic materials; for the tax or legal
387    consequences of this transaction; for the availability, capability, and/or cost of utility, sewer, septic, or community
388    amenities; for any proposed or pending condemnation actions involving Property; for applicable boundaries of school
389    districts or other school information; for the appraised or future value of the Property; for square footage or acreage of the
390    Property; for any condition(s) existing off the Property which may affect the Property; for the terms, conditions, and
391    availability of financing; and/or for the uses and zoning of the Property whether permitted or proposed. Buyer and Seller
392    acknowledge that Brokers are not experts with respect to the above matters and that they have not relied upon any advice,
393    representations or statements of Brokers (including their firms and affiliated licensees) and waive and shall not assert any
394    claims against Brokers (including their firms and affiliated licensees) involving same. Buyer and Seller understand that it
395    has been strongly recommended that if any of these or any other matters concerning the Property are of concern to them,
396    that they secure the services of appropriately credentialed experts and professionals of Buyer's or Seller's choice for the
397    independent expert advice and counsel relative thereto. Buyer and Seller acknowledge that photographs, marketing
398    materials, and digital media used in the marketing of the property may continue to remain in publication after Closing.
399    Buyer and Seller agree that Brokers shall not be liable for any uses of photographs, marketing materials or digital media
400    which the Broker is not in control.

401 **13. Brokerage.** As specified by separate agreement(s), the parties agree and acknowledge that the Brokers involved in this
402    transaction may receive compensation for their services; the compensation may come from more than one party. All
403    parties to this Agreement agree and acknowledge that any real estate firm involved in this transaction shall be deemed a
404    third-party beneficiary only for the purposes of enforcing their compensation rights, and as such, shall have the right to
405    maintain an action on this Agreement for any and all compensations due and any reasonable attorney's fees and court
406    costs. **Broker compensation is not set by law and compensation rates are fully negotiable.**

407 **14. Default.** Should Buyer default hereunder, the Earnest Money/Trust Money shall be forfeited as damages to Seller and
408    shall be applied as a credit against Seller's damages. Seller may elect to sue, in contract or tort, for additional damages or
409    specific performance of the Agreement, or both. Should Seller default, Buyer's Earnest Money/Trust Money shall be
410    refunded to Buyer. In addition, Buyer may elect to sue, in contract or tort, for damages or specific performance of this
411    Agreement, or both. In the event that any party hereto shall file suit for breach or enforcement of this Agreement (including
412    suits filed after Closing which are based on or related to the Agreement), the prevailing party shall be entitled to recover
413    all costs of such enforcement, including reasonable attorney's fees. In the event that any party exercises its right to
414    terminate due to the default of the other pursuant to the terms of this Agreement, the terminating party retains the right to
415    pursue any and all legal rights and remedies against the defaulting party following termination. The parties hereby agree
416    that all remedies are fair and equitable and neither party shall assert the lack of mutuality of remedies, rights and/or
417    obligations as a defense in the event of a dispute.

418 **15. Home Protection Plan.** This is not a substitution for Home Inspection. Exclusions to coverage may apply. **(Select the**
419    **appropriate box below. Items not selected are not part of this Agreement).**

420    ☐ **Home Protection Plan.** _____ to pay $_____ for the purchase of a limited home
421    protection plan to be funded at Closing. Plan Provider: _____
422    Ordered by: _____ (Real Estate Company)

423    ☑ **Home Protection Plan waived.** _____

424 **16. Non-Assignability.** This Purchase and Sale Agreement shall not be assignable by the Buyer without prior written consent
425    by the Seller.

This form is copyrighted and may only be used in real estate transactions in which Brent Long _____ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615- 321-1477.

dotloop signature verification:

426  **17. Other Provisions.**

427  **A.  Binding Effect, Entire Agreement, Modification, Assignment, and Binding Agreement Date.**  This Agreement
428  shall be for the benefit of, and be binding upon, the parties hereto, their heirs, successors, legal representatives and
429  approved assigns.  This Agreement constitutes the sole and entire agreement between the parties hereto and no
430  modification of this Agreement shall be binding unless signed by all parties or approved assigns to this Agreement.
431  No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto.  It
432  is hereby agreed by both Buyer and Seller that any real estate agent working with or representing either party shall not
433  have the authority to bind the Buyer, Seller or any approved assignee to any contractual agreement unless specifically
434  authorized in writing within this Agreement.  Any approved assignee shall fulfill all the terms and conditions of this
435  Agreement.  The parties hereby authorize either licensee to insert the time and date of receipt of the notice of
436  acceptance of the final offer. The foregoing time and date shall be referred to for convenience as the Binding
437  Agreement Date for purposes of establishing performance deadlines.

438  **B.  Survival Clause.**  Any provision contained herein, which by its nature and effect is required to be performed after
439  Closing, shall survive the Closing and delivery of the deed and shall remain binding upon the parties to this Agreement
440  and shall be fully enforceable thereafter.

441  **C.  Governing Law and Venue.**  This Agreement is intended as a contract for the purchase and sale of real property and
442  shall be governed by and interpreted in accordance with the laws and in the courts of the State of Tennessee.

443  **D.  Time of Essence.**  Time is of the essence in this Agreement.

444  **E.  Terminology.**  As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa;
445  (2) all pronouns shall mean and include the person, entity, firm or corporation to which they relate; (3) the masculine
446  shall mean the feminine and vice versa; and (4) the term day(s) used throughout this Agreement shall be deemed to
447  be calendar day(s) ending at 11:59 p.m. local time unless otherwise specified in this Agreement.  Local time shall be
448  determined by the location of Property.  **In the event a performance deadline**, other than the Closing Date (as defined
449  herein), Date of Possession (as defined herein), Completion of Repair Deadline (as defined in the Repair/Replacement
450  Amendment), and Offer Expiration Date (as defined in Time Limit of Offer Section), occurs on a Saturday, Sunday
451  or legal holiday, the performance deadline shall extend to the next following business day.  Holidays as used herein
452  are those days deemed federal holidays pursuant to 5 U.S.C. § 6103(a).  In calculating any time period under this
453  Agreement, the commencement shall be the day following the initial date (e.g. Binding Agreement Date).

454  **F.  Responsibility to Cooperate.**  Buyer and Seller agree to timely take such actions and produce, execute, and/or deliver
455  such information and documentation as is reasonably necessary to carry out the responsibilities and obligations of this
456  Agreement.  Except as to matters which are occasioned by clerical errors or omissions or erroneous information, the
457  approval of the closing documents by the parties shall constitute their approval of any differences between this
458  Agreement and the Closing.  Buyer and Seller agree that if requested after Closing, they shall correct any documents
459  and pay any amounts due where such corrections or payments are appropriate by reason of mistake, clerical errors or
460  omissions, or the result of erroneous information.

461  **G.  Notices.**  Except as otherwise provided herein, all notices and demands required or permitted hereunder shall be in
462  writing and delivered either (1) in person; (2) by a prepaid overnight delivery service; (3) by facsimile transmission
463  (FAX); (4) by the United States Postal Service, postage prepaid, registered or certified, return receipt requested; or (5)
464  Email.  **NOTICE** shall be deemed to have been given as of the date and time it is actually received.  Receipt of notice
465  by the real estate licensee or their Broker assisting a party as a client or customer shall be deemed to be notice to that
466  party for all purposes under this Agreement as may be amended, unless otherwise provided in writing.

467  **H.  Risk of Loss.**  The risk of hazard or casualty loss or damage to Property shall be borne by the Seller until transfer of
468  title. If casualty loss prior to Closing exceeds 10% of the Purchase Price, Seller or Buyer may elect to terminate this
469  Agreement with a refund of Earnest Money/Trust Money to Buyer.

470  **I.  Equal Housing.**  This Property is being sold without regard to race, color, creed, sex, religion, handicap, familial
471  status, or national origin.

472  **J.  Severability.**  If any portion or provision of this Agreement is held or adjudicated to be invalid or unenforceable for
473  any reason, each such portion or provision shall be severed from the remaining portions or provisions of this
474  Agreement, and the remaining portions or provisions shall be unaffected and remain in full force and effect.  In the
475  event that the contract fails due to the severed provisions, then the offending language shall be amended to be in
476  conformity with state and federal law.

This form is copyrighted and may only be used in real estate transactions in which Brent Long_____ is involved as a Tennessee REALTORS® authorized
user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615- 321-1477.

TENNESSEE
REALTORS®   **Copyright 2015 © Tennessee Association of Realtors®**          **Version 01/01/2025**
            **RF401 – Purchase and Sale Agreement, Page 9 of 11**

477     **K. Alternative Dispute Resolution.** In the event the parties elect to utilize Alternative Dispute Resolution,
478     incorporate "Resolution of Disputes by Mediation Addendum/Amendment" (RF629).

479     **L. Contract Construction.** This Agreement or any uncertainty or ambiguity herein shall not be construed against any
480     party but shall be construed as if all parties to this Agreement jointly prepared this Agreement.

481     **M. Section Headings.** The Section Headings as used herein are for reference only and shall not be deemed to vary the
482     content of this Agreement or limit the scope of any Section.

483 **18. Seller's Additional Obligations.** In addition to any other disclosure required by law, the Seller shall, prior to entering
484 into an Agreement with a Buyer, disclose in writing including acknowledgement of receipt: (a) the presence of any known
485 exterior injection well or sinkhole (as defined in TCA § 66-5-212) on the property; (b) the results of any known percolation
486 test or soil absorption rate performed on the property that is determined or accepted by the Department of Environment and
487 Conservation; (c) if the property is located in a Planned Unit Development (PUD); (d) if the property is located in a PUD, make
488 available to the Buyer a copy of the development's restrictive covenants, homeowner bylaws and master deed upon request;
489 (e) if any single-family residence located on the Property has been moved from an existing foundation to another foundation
490 where such information is known to the Seller; and (f) if a permit for a subsurface sewage disposal system for the Property was
491 issued during a sewer moratorium pursuant to TCA § 68-221-409. If so, Buyer may have a future obligation to connect to the
492 public sewer system.

493 **19. Method of Execution.** The parties agree that signatures and initials transmitted by facsimile, other photocopy transmittal,
494 or by transmittal of digital signature as defined by the applicable State or Federal law shall be acceptable and may be treated
495 as originals and that the final Purchase and Sale Agreement containing all signatures and initials may be executed partially by
496 original signature and partially on facsimile, other photocopy documents, or by digital signature as defined by the applicable
497 State or Federal law.

498 **20. Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part
499 of this Agreement:

500
501
502

503 **21. Special Stipulations.** The following Special Stipulations, if conflicting with any preceding section, shall control:
504
505 1.) Seller shall pay 3% of the purchase price of the property to Compass RE at closing as a commission.

506 2.) This agreement is contingent upon the sale and closing of the property located at 1128 Julian Way Murfreesboro, TN 37128 on or
507 before the closing date of this agreement. If buyer's property does not close on or before the closing date of this agreement, buyer may
508 terminate this agreement with written notice to seller with refund of earnest money to buyer.

509 3.) Seller to paint the walls, trim, built ins, doors at seller's expense and be completed before the close date in this agreement.
510
511
512
513
514

515 **22. Time Limit of Offer.** This Offer may be withdrawn at any time before acceptance with Notice. Offer terminates if not
516 countered or accepted by 9_____ o'clock ☐ a.m./☑ p.m.; on the 15th____ day of January_____ , 2025____ .

517 **LEGAL DOCUMENTS: This is an important legal document creating valuable rights and obligations. If you have any**
518 **questions about it, you should review it with your attorney. Neither the Broker nor any Agent or Facilitator is**
519 **authorized or qualified to give you any advice about the advisability or legal effect of its provisions.**

520 **NOTE: Any provisions of this Agreement which are preceded by a box "☐" must be marked to be a part of this**
521 **Agreement. Any blank herein that is not otherwise completed shall be deemed to be zero or not applicable.**

522 **WIRE FRAUD WARNING: Never trust wiring instructions sent via email. Cyber criminals are hacking email accounts**
523 **and sending emails with fake wiring instructions. These emails are convincing and sophisticated. Always independently**
524 **confirm wiring instructions in person or via a telephone call to a trusted and verified phone number. Never wire money**
525 **without double-checking that the wiring instructions are correct. NEVER ACCEPT WIRING INSTRUCTIONS FROM**
526 **YOUR AGENT OR BROKER.**

This form is copyrighted and may only be used in real estate transactions in which Brent Long_____ is involved as a Tennessee REALTORS® authorized
user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615- 321-1477.

 TENNESSEE
REALTORS    Copyright 2015 © Tennessee Association of Realtors®      Version 01/01/2025
         RF401 – Purchase and Sale Agreement, Page 10 of 11

dotloop signature verification: dtlp.us/k6rTv-rQ2k-RZSJ

**BY AFFIXING YOUR SIGNATURE BELOW, YOU ACKNOWLEDGE THAT YOU HAVE REVIEWED AND UNDERSTAND ALL TERMS OF THIS AGREEMENT.**

527 | Buyer hereby makes this offer.

528 | *Doug Atkins*  — dotloop verified 01/15/25 5:09 PM CST DH8C-IU9L-I4XS-ISF4

*Heather Atkins* — dotloop verified 01/15/25 5:56 PM CST KZ4W-VSFJ-LGFL-QXDT

529 | **BUYER**          **BUYER**

530 | _____ at _____ o'clock ☐ am/ ☐ pm     _____ at _____ o'clock ☐ am/ ☐ pm

531 | **Offer Date**         **Offer Date**

---

532 | Seller hereby:

533 | ☑ **ACCEPTS** – accepts this offer.

534 | ☐ **COUNTERS** – accepts this offer subject to the attached Counter Offer(s).

535 | ☐ **REJECTS** – rejects this offer and makes no counter offer.

536 | *Jack Robert Thacker* — dotloop verified 01/15/25 9:16 PM EST LVYK-X7AF-UTTX-F6ZI

537 | **SELLER**          **SELLER**

538 | _____ at _____ o'clock ☐ am/ ☐ pm     _____ at _____ o'clock ☐ am/ ☐ pm

539 | **Date**          **Date**

540 | **Acknowledgement of Receipt.** *Meagan Miller* — dotloop verified 01/15/25 8:17 PM CST RVT7-G3WH-RAH1-IB9P ledges receipt of the final accepted offer
541 | on _____ at _____ o'clock ☐ am/ ☐ pm, and this shall be referred to as the Binding Agreement Date for
542 | purposes of establishing performance deadlines as set forth in the Agreement.

---

**For Information Purposes Only:**

Listing Company: _____
Listing Firm Address: _____
Firm License No.: _____
Firm Telephone No.: _____
Listing Licensee: _____
Licensee License Number: _____
Licensee Email: _____
Licensee Cellphone No.: _____

Selling Company: Compass RE - Murfreesboro
Selling Firm Address: 410 Uptown Square, Murfreesboro, TN 37129
Firm License No.: _____
Firm Telephone No.: 2707791143
Selling Licensee: Brent Long
Licensee License Number: 331897
Licensee Email: brent.long@compass.com
Licensee Cellphone No.: 2707791143

Home Owner's / Condominium Association ("HOA/COA")/ Property Management Company:

Phone: _____     Email: _____

*NOTE: This form is provided by Tennessee REALTORS® to its members for their use in real estate transactions and is to be used as is. By downloading and or using this form, you agree and covenant not to alter, amend, or edit said form or its contents except as where provided in the blank fields, and agree and acknowledge that any such alteration, amendment or edit of said form is done at your own risk. Use of the Tennessee REALTORS® logo in conjunction with any form other than standardized forms created by Tennessee REALTORS® is strictly prohibited. This form is subject to periodic revision and it is the responsibility of the member to use the most recent available form.*

This form is copyrighted and may only be used in real estate transactions in which Brent Long _____ is involved as a Tennessee REALTORS® authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to Tennessee REALTORS® at 615- 321-1477.

TENNESSEE **REALTORS**   **Copyright 2015 © Tennessee Association of Realtors®**   **Version 01/01/2025**
**RF401 – Purchase and Sale Agreement, Page 11 of 11**