

**SO ORDERED.**
**SIGNED this 29th day of July, 2025**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

Rachel Ralston Mancl
UNITED STATES BANKRUPTCY JUDGE

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

In re

JACK ROBERT THACKER JR.,

Debtor.

No. 2:25-bk-50237-RRM
Chapter 11 Subchapter V

**ORDER CONFIRMING PLAN**

This case came before the court on July 29, 2025, for a confirmation hearing on the debtor's plan filed on June 3, 2025. The plan and notice of hearing having been transmitted to creditors, and the court having determined that the requirements for confirmation set forth in 11 U.S.C. § 1191(a) have been satisfied, the plan, a copy of which is attached, is confirmed.

# # #

**Fill in this information to identify the case:**

Debtor Name   JACK ROBERT THACKER, JR.

United States Bankruptcy Court for the Eastern District of Tennessee

Case number:   2:25-bk-50237-RRM

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11        02/20

| Jack Robert Thacker, Jr. | Plan of Reorganization, Dated | June 3, 2025 |

[If this plan is for a small business debtor under Subchapter V, 11 U.S.C. § 1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Background section below may be used for that purpose. Otherwise, the Background section can be deleted from the form, and the Plan can start with "Article 1: Summary"]

**Background for Cases Filed Under Subchapter V**

### A. Description and History of the Debtor's Business

The Debtor is an individual. The Debtor was a financial advisor and the principal of Center Street Advisors, Inc. and Center Street Securities, Inc., which were sold in 2021 to Arete Wealth, Inc. Debtor worked as a financial advisor for Arete Wealth, Inc. until September 20, 2023. Debtor worked at Realta Equities until November 14, 2024. Debtor was unemployed on the March 6, 2025 Petition filing date.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit A.

### C. Ability to make future plan payments and operate without further reorganization

The Plan is a liquidation Plan.

The final Plan payment is expected to be paid within thirty (30) days after resolution of the estate's claims against Arete Shield, LLC and Arete Wealth, LLC and any recovery thereon.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

Debtor Name   Jack Robert Thacker, Jr.                                              Case number  2:25-bk-50237-RRM

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Jack Robert Thacker, Jr. (the *Debtor*) from sale of assets and recovery, if any, from Arete Shield, LLC and Arete Wealth, LLC.

This Plan provides for:   1 class of priority claims;
2 classes of secured claims;
2 classes of non-priority unsecured claims; and
1 class for the interests of the individual Debtor.

Non-priority unsecured creditors holding allowed Class 3 claims will receive distributions, which the proponent of this Plan believes will be not less than twenty-seven (27) cents on the dollar plus the unknown value of the estate's illiquid investments, if timely filed claims are allowed in the amounts filed. Non-priority unsecured creditors in Class 3.1 who did not timely file a Proof of Claim will not receive any distribution, unless Class 3 claims are paid in full with interest. This Plan also provides for the payment of administrative and priority claims.

All creditors should refer to Articles 3 and 4 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

2.01   **Class 1**................................   All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)).

2.02   **Class 2**................................   The claim of  | First Horizon |, to the extent allowed as a secured claim under § 506 of the Code.

Class 2.1                                            The claim of USF Credit Union to the extent allowed as a secured claim under §506 of the Code.

2.03   **Class 3**................................   All non-priority unsecured claims allowed under § 502 of the Code which are timely filed or scheduled in Schedule E/F except claims scheduled as disputed and/or unliquidated.

Class 3.1                                            All non-priority unsecured tardily filed claims allowed under §502 of the Code.

2.04   **Class 4**................................   The interests of the individual Debtor in property of the estate.

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

3.01   **Unclassified claims**   Under section § 1123(a)(1), administrative expense claims, ["gap" period claims in an involuntary case allowed under § 502(f) of the Code,] and priority tax claims are not in classes.

Debtor Name   Jack Robert Thacker, Jr.                                    Case number  2:25-bk-50237-RRM

| | | |
|---|---|---|
| 3.02 **Administrative expense claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, [and a "gap" claim in an involuntary case allowed under § 502(f) of the Code,] will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. | |
| | Below are the anticipated administrative expenses claims as of the Confirmation Date and their treatment. Gentry, Tipton & McLemore expects to file its initial Application for Interim Compensation requesting approximately $35,000 for services through May 31, 2025 on or before June 10, 2025. Gentry, Tipton & McLemore is holding $52,832.00 from a prepetition security deposit. | |

| Claimant | Amount | Proposed Treatment |
|---|---|---|
| Aaron Spencer, Subchapter V Trustee | $15,000 (estimated) | Cash equal to the allowed amount of the Claim on the Effective Date of the Plan or as otherwise agreed. |
| Gentry, Tipton & McLemore (Debtor's attorney fees) | $25,000 (estimated) | Cash equal to the allowed amount of the Claim on the Effective Date of the Plan or as otherwise agreed. |
| Penn Stuart Eskridge (Debtor's attorney fees) | $25,000 (estimated) | Cash equal to the allowed amount of the Claim on the Effective Date of the Plan or as otherwise agreed. |

Professional fees incurred after the Confirmation Date shall be paid as allowed by the Court after Applications are filed and notice and a hearing.

| | |
|---|---|
| 3.03 **Priority tax claims** | Debtor does not believe there are any priority tax claims within the scope of § 1129(a)(9)(C) of the Code. |
| 3.04 **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. No statutory fees are owing. |

Official Form 425A            **Plan of Reorganization for Small Business Under Chapter 11**            page **3**

Debtor Name  Jack Robert Thacker, Jr.                                    Case number  2:25-bk-50237-RRM

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☑ Unimpaired | The only claim in this Class is a domestic support obligation for $90,000.00 owing to Joy Necessary. The claim will be paid by 12 monthly $7,500 payments beginning in January 2026. |
| Class 2 – **Secured claim** of First Horizon | ☐ Impaired<br>☑ Unimpaired | The claim was paid in full from the 4332 Pretoria Run sale proceeds. |
| Class 2.1 – **Secured claim** of USF Credit Union. | ☐ Impaired<br>☑ Unimpaired | This claim has been paid in full pursuant to setoff allowed by the Agreed Order (Doc 106) entered on May 15, 2025. |
| Class 3 – **Non-priority unsecured creditors** | ☑ Impaired<br>☐ Unimpaired | Class 3 claims will be paid from the liquidation of non-exempt assets and recovery, if any, from Arete Shield, LLC and Arete Wealth, LLC. |
| Class 3.1 | ☑ Impaired<br>☐ Unimpaired | Class 3.1 claims will not be paid any dividend unless Class 3 claims are paid in full with interest. |
| Class 4 – **The interests of the individual Debtor** | ☐ Impaired<br>☐ Unimpaired | The Debtor shall retain any property of the estate which is not liquidated to pay allowed claims. |

## Article 5: Allowance and Disallowance of Claims

5.01 **Disputed claim**

A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 **Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order].

5.03 **Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| Debtor Name | Jack Robert Thacker, Jr. | Case number | 2:25-bk-50237-RRM |
|---|---|---|---|

| | | |
|---|---|---|
| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The Debtor assumes the following unexpired lease as of the effective date:<br><br>Lease to WL Financial Advisors, LLC of 951 Cumberland Street, Bristol, VA |
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br><br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than ⌊thirty (30)⌋ days after the date of the order confirming this Plan. |

### Article 7: Means for Implementation of the Plan

The Debtor shall fund the Plan from funds in the estate, any recovery from Arete Shield, LLC or Arete Wealth, LLC, and the sale of non-exempt assets, except for 2261 Bullock Hollow Road ("Residence") and the 2021 GMC Sierra. The Residence is jointly owned by Debtor and his parents with right of survivorship. Debtor expects one of his parents will survive him.

### Article 8: General Provisions

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |
| 8.02 | **Effective date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of ⌊Tennessee⌋ govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 | **Corporate governance** | Not applicable. |

Debtor Name  Jack Robert Thacker, Jr.                                              Case number  2:25-bk-50237-RRM

8.08 **Retention of Jurisdiction**     See attached "Retention of Jurisdiction."

## Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt:
    (i) imposed by this Plan; or
    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:
    (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10: Other Provisions

**10.01 Continued Reporting Requirements.** Pursuant to Fed. R. Bank. P. 2015, the Debtor is required to file monthly operating reports until Confirmation. After Confirmation, if the Plan is confirmed under § 1191(b), the Debtor shall file quarterly reports until the case is closed, dismissed, converted to another chapter of the Code, or a final decree is entered by the Court.

**10.02 Modification of the Plan.** The Debtor may propose amendments or modifications of this Plan at any time prior to Confirmation without leave of the Court. After Confirmation, the Debtor, with approval of the Court, and so long as it does not materially or adversely affect the interests of creditors, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the order of confirmation in such a manner as may be necessary to carry out the purposes and effect of this Plan. The foregoing provisions of this paragraph do not limit the ability of the Debtor to modify the Plan under § 1193 and applicable rules.

**10.03 Notice.** Unless otherwise directed by the Debtor in writing, notice shall be sufficient if delivered as follows:

| | |
|---|---|
| If to the Debtor or Reorganized Debtor: | J.R. Thacker, Jr.<br>2261 Bullock Hollow Road<br>Bristol, TN 37620 |
| With copy to: | Maurice K. Guinn<br>Gentry, Tipton & McLemore, P.C.<br>900 S. Gay Street, Suite 2300<br>Knoxville, TN 37902 |
| If to the Trustee; | M. Aaron Spencer<br>P. O. Box 900<br>Knoxville, TN 37901 |

**10.04 Vesting of Property.** All property of the Debtor's estate shall vest in the Debtor upon completion of the Plan payments.

Debtor Name  Jack Robert Thacker, Jr.                                          Case number  2:25-bk-50237-RRM

**10.05 Legal Binding Effect**. The provisions under the Plan shall bind all claimants, whether or not they accept this Plan or whether or not their claim is impaired.

**10.06 Distribution to Claimants**. All distributions under the Plan shall be made by the Debtor, whether the Plan is confirmed pursuant to Section 1191(a) or (b) of the Bankruptcy Code. The Debtor shall file with the Court as a supplement to the Plan and provide notice to all creditors at or before confirmation a list of all of the creditors who will be receiving payments under the Plan and the total amount projected to be paid to each creditor under the Plan. The initial payment to holders of allowed claims in Class 3.1 shall be made 30 days after the Effective Date and every 90 days thereafter for the term of this Plan.

The following provisions shall govern distributions under the Plan:

   a.  All payments under the Plan shall be made by the Debtor to the holder of each allowed claim at the address of such holder as listed on the Schedules, or if different, the Proof of Claim, unless the Debtor has been notified in writing of a change of address.
   b.  Any payment required to be made under the Plan on a day other than a business day shall be made on the next succeeding business day.
   c.  *De minimis* Distributions less than five dollars ($5.00) shall not be made, and shall become unclaimed funds, which shall vest in the reorganized Debtor.
   d.  Holders of allowed claims shall not be permitted to amend or otherwise modify any claim after the later of the claims bar date or the confirmation date without leave of the Bankruptcy Court. Any amendment to a claim filed after the confirmation date shall be deemed disallowed in full and expunged without any action by Debtor unless the claimholder has obtained Court authorization for the filing of such amendment. The Debtor shall have no obligation to recognize any transfer of any claim after distributions have started.
   e.  Unless expressly provided in the Plan, or confirmation order, post-petition interest and fees shall not accrue on or after the Petition Date on account of any claim.
   f.  Unclaimed distributions shall be administered pursuant to Section 347 of the Bankruptcy Code.

**10.07 Default Remedies**. If the Debtor does not make the payments provided for under the Plan as and when due, the Debtor will be in default under the Plan ("Default"). After the occurrence of a Default, any creditor may send written notice to the Debtor, with a copy to Debtor's attorney and the Subchapter V Trustee, that the Debtor is in Default under the Plan ("Default Notice"). For payments to general unsecured creditors, the Debtor will be entitled to a 45-day grace period after the transmission of the Default Notice ("Grace Period") to cure the Default. If the Debtor has not cured the Default within the Grace Period, the creditor is entitled to pursue its rights in the Bankruptcy Court for the Eastern District of Tennessee or to commence a lawsuit to liquidate its claim in the Circuit Court or the Chancery Court in Sullivan County, Tennessee.

**10.08 Subchapter V Trustee**.
   1. <u>Service of Trustee.</u> The service of the trustee appointed under Subchapter V of Chapter 11 (the "Subchapter V Trustee") shall terminate in accordance with Section 1183(c) of Title 11. In a consensual case, such service shall terminate when the Plan has been substantially consummated. In a nonconsensual case, the Subchapter V Trustee shall continue to monitor the Debtor's compliance with the Plan. If the Debtor fails to timely make any plan payment to creditors, the Subchapter V Trustee may file and serve a notice of delinquency upon the Debtor and the Debtor's attorney. The Debtor shall have 45 days from the date of the notice of delinquency to make all payments due under the Plan, including any payments that become due within the 45-day period. If the Debtor is seeking to cure the delinquency in a modified plan, the Debtor must file a motion to modify the confirmed plan within 45 days of the notice of delinquency. If the Debtor is not current with Plan payments on the 45th day after the date of the notice of delinquency or has not filed a motion to modify within the time period, the Trustee may file and serve a report of non-compliance and may thereafter seek the dismissal or conversion of the case to Chapter 7.

   2. <u>Compensation.</u> Under Section 330 of the Bankruptcy Code, the Subchapter V Trustee shall be compensated for services and reimbursed for expenses. However, the method of payment of the Subchapter V Trustee compensation depends on the provision under which the Plan is confirmed and the method of disbursement to creditors under the Plan:

Debtor Name   Jack Robert Thacker, Jr.                                                              Case number  2:25-bk-50237-RRM

    a.  The Subchapter V Trustee's total compensation is estimated to be $15,000.00 through confirmation. The Subchapter V Trustee will apply to the Court for an award of compensation through the application process that is used by professionals. The Subchapter V Trustee will file a final fee application for compensation to be heard with the other final fee applications in the case.

    b.  If the Plan is confirmed on a consensual basis under Section 1191(a) of Title 11, the service of the Subchapter V Trustee terminates with substantial consummation of the Plan under Section 1183(c)(1). The Subchapter V Trustee's allowed compensation, as with other administrative expenses, is payable on the Effective Date of the Plan, unless the Subchapter V Trustee agrees to different treatment.

    c.  If the Plan is confirmed on a non-consensual basis under Section 1191(b) of Title 11, then the Subchapter V Trustee will remain in place throughout the life of the Plan, and the Subchapter V Trustee may be entitled to additional compensation for services provided after confirmation. The fee for the Subchapter V Trustee to monitor the plan payments made by Debtor shall be $500 on a semi-annual basis. The Subchapter V Trustee may file additional or supplemental fee applications throughout the life of the Plan. Upon approval of the Subchapter V Trustee's fee applications in a non-consensual case, as long as all professional administrative claims are similarly treated in the Plan, the Debtor shall pay all fee amounts due to the Subchapter V Trustee on the Effective Date of the Plan, over the remaining life of the Plan, or forthwith.

    3.  <u>United States Trustee.</u>  The United States Trustee is not bound by any of the provisions in Section 10.07 or 10.08 and may exercise all available remedies for non-compliance with the Bankruptcy Code without any cure or notice period.

**10.9 Request for "Cram Down" of Non-Accepting Classes**. The Debtor requests that the Court confirm the Plan notwithstanding the failure of classes to vote to accept the Plan. Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in a manner prescribed by Section 1191 of the Code. A Plan that binds non-accepting classes is commonly referred to as a "cram down" Plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the requirements of Section 1129(a)(8), 1129(a)(10), or 1129(a)(15) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan under the standard of Section 1191(c) of the Code. **Creditors concerned with how the cram down provisions will affect their claim or equity interest should seek independent counsel as the variations on this general rule are numerous and complex.** The Debtor is not required to file a motion or other pleading to seek and obtain cram down on a Plan. As a result, the Debtor will seek the Court's confirmation of this Plan in accordance with the cram down provisions of the Bankruptcy Code by oral motion at the date and time of the confirmation hearing without further notice to creditors or other parties in interest.

Respectfully submitted,

✗ /s/Jack Robert Thacker, Jr.                                    /s/ Jack Robert Thacker, Jr.
[Signature of the Plan Proponent]                                Jack Robert Thacker, Jr.

✗ /s/Maurice K. Guinn                                            /s/ Maurice K. Guinn
[Signature of the Attorney for the Plan Proponent]               Maurice K. Guinn

8.08 Retention of Jurisdiction

Pursuant to §§105(a) and 1142 of the Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Code, (b) arising in or related to the Chapter 11 Case or the Plan or (c) that relates to the following:

(i) To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article 6 hereof for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine any and all Claims and any related disputes (including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease);

(ii) To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtor, as applicable, after the Effective Date;

(iii) To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any contested claim in whole or in part;

(iv) To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by §1142 of the Code;

(v) To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vi) To hear and determine all fee applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Code;

(vii) To hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with the Plan, or its interpretation, implementation, enforcement or consummation;

(viii) To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement or consummation;

(ix) To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any claim or cause of action by, on behalf of, or against the estate;

(x)     To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order;

(xi)    To hear and determine matters concerning state, local and federal taxes, fines, penalties or additions to taxes for which the Reorganized Debtor, the Debtor, or the Debtor in Possession, may be liable, directly or indirectly, in accordance with §§ 346, 505 and 1146 of the Code;

(xii)   To hear and determine all controversies, suits and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtor or any person under the Plan;

(xiii)  To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with causes of action of the Debtor (including Avoidance Actions) commenced by the Debtor or any third parties, as applicable, before or after the Effective Date;

(xiv)   To enter an order or final decree closing the Chapter 11 Case;

(xv)    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xvi)   To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Code.

Jack Robert Thacker, Jr.
Case No. 2:25-bk-50237-RRM

## LIQUIDATION ANALYSIS

On the March 6, 2025 Petition Date, the Debtor's **non-exempt** assets, as reported on Schedule A/B were:

| ASSET | VALUE OF DEBTOR'S INTERESTS |
|---|---|
| 4332 Pretoria Run – Rutherford County | $ 1,107,500.00 |
| 2261 Bullock Hollow Road – Sullivan County | $ 62,500.00 |
| 951 Cumberland – Washington County, Virginia | $ 200,000.00 |
| Vehicle – 2021 Sierra GMC | $ 40,000.00 |
| Vehicle – 2012 Porsche Panamera | $ 18,000.00 |
| Vehicle – 2017 Maserati Levante | $ 25,000.00 |
| Watercraft – 2011 Hyde Aluminum Row Boat | $2,000.00 |
| Cash on hand | $620.00 |
| Deposits of Money – Checking: Redstone Credit Union | $ 39,157.00 |
| Deposits of Money – Checking: New Peoples Bank | $ 17,000.00 |
| Deposits of Money – Savings: United Southeast Fed CU | $ 34,317.00 |
| Deposits of Money – Checking: First Community Bank | $ 5,000.00 |
| Deposits of Money – Savings: Redstone Credit Union | $ 24,413.00 |
| Deposits of Money – Checking: United Southeast Fed CU | $ 204,705.00 |
| Bonds – Axos Clearing – Brokerage Acct (non-traded assets) | $ 177,246.00 |
| Non-Publicly Traded Stock – Cygnus Fund VI   1% | Unknown |
| Non-Publicly Traded Stock – EC2 Equity | Unknown |
| Non-Publicly Traded Stock – EC2 Series D Bonds | Unknown |

EXHIBIT A

| | | |
|---|---|---|
| Non-Publicly Traded Stock – The E2c Series D Bonds 1% | | Unknown |
| Non-Publicly Traded Stock – The Golf Sanctuary | | Unknown |
| Non-Publicly Traded Stock – GWG Bonds | | Unknown |
| Non-Publicly Traded Stock – Highland Blasting, Inc. | | Unknown |
| Non-Publicly Traded Stock – Montego Midland Mesa Minerals, LLC | | Unknown |
| Non-Publicly Traded Stock – Montego Midland River Minerals, LLC | | Unknown |
| Non-Publicly Traded Stock – Montego Silver Peak Minerals, LLC | | Unknown |
| Non-Publicly Traded Stock – SKK Ventures QP, LLC | | Unknown |
| Non-Publicly Traded Stock – Thacker & Associates, LLC | | Unknown |
| Non-Publicly Traded Stock – Resource Media, LLC | | Unknown |
| Utility Deposit – Murfreesboro Utility District | | $ 100.00 |
| Credit – Citibank Mastercard | | $ 487.00 |
| Copyright - book self-published in 2012 – no sales last 10 yrs | | $ 0.00 |
| Tax Refunds – Carry forward est. overpayment 2023 | | $ 38,473.00 |
| Owed to me – Erie Insurance for roof damage | | $ 5,677.00 |
| Insurance Policies – Prudential Term Life | | $ 0.00 |
| Insurance Policies – Midland National Life | | $ 0.00 |
| Claims against Arete Shield, LLC | | Unknown |
| Claim against Arete Wealth, LLC | | Unknown |
| Claim against Bixby Law, PLLC & others | | Unknown |

Debtor believes the potentially avoidable transfers of value to the estate are disclosed on Pages 3 and 4 of the Statement of Financial Affairs (Doc 7). Debtor does not believe the payments to Karen Graham or Joy Necessary are avoidable, because of 11 U.S.C. §547(b)(5). Other transferees may have defenses to avoidance.

2

Claims filed as of both May 15th and May 30, 2025 total $3,214,261.137 with the breakdown in the following categories:

| Secured | Priority | General Unsecured |
|---|---|---|
| $2,709.02 | $0.00 | $3,211,552.11 |

The Secured claim is the claim of United Southeast Federal Credit Union, which has a security interest in the Debtor's deposit account and is permitted to set off its claim, pursuant to the Agreed Order (Doc 106) entered on May 15, 2025.

Debtor scheduled First Horizon with a $516,000.00 claim secured by 4332 Pretoria Run, which was sold pursuant to the Amended Agreed Order Granting Motion to Sell (Doc 55). The Subchapter V Trustee is holding the $513,095.65 surplus proceeds after payment of the First Horizon secured claim and closing costs and $14,187.17 paid by Erie Insurance, for a total of $527,282,82.

The claims total is increased by the following claims scheduled by the Debtor, but not scheduled as contingent or disputed or unliquidated.

| Claimant | Amount |
|---|---|
| Joy Necessary[1] | $ 90,000.00 |
| Barclay Bank Mastercard | $ 7,864.00 |
| Blank Rome | $ 25,370.00 |
| Capital One Visa | $    682.00 |
| Celia M. Howell Osborne | $ 50,000.00 |
| Citibank Mastercard | $  4,203.00 |
| David Porteous | $107,230.00 |
| FINRA | $ 16,031.25 |
|  | $301,380.25 |

---

[1] Joy Necessary's $90,000 claim is a domestic support obligation entitled to first priority under 11 U.S.C. §507(a)

As of May 30, 2025, the balance in the Debtor-In-Possession account is $304,006.86. These funds are from Assets identified in the chart above as "Deposits of Money." The sum of the funds in the Debtor-In-Possession account and the 4332 Pretoria Run surplus proceeds and the Erie Insurance payment, both held by the Subchapter V Trustee, is $831,289.68.

3

The non-exempt other Assets and current value of the Debtor's Interests, excluding 2261 Bullock Hollow Road (jointly owned by the Debtor and his parents with right of survivorship), on Schedule A/B with a known value are:

| | |
|---|---|
| 951 Cumberland – Washington County, Virginia | $ 200,000.00 |
| Vehicle – 2021 Sierra GMC | $ 34,800.00 |
| Vehicle – 2012 Porsche Panamera | $ 11,300.00 |
| Vehicle – 2017 Maserati Levante | $ 17,050.00 |
| Watercraft – 2011 Hyde Aluminum Row Boat | $ 2,000.00 |
| Cash on hand | $620.00 |
| Utility Deposit – Murfreesboro Utility District | $ 100.00 |
| Credit – Citibank Mastercard | $ 487.00 |
| Copyright - book self-published in 2012 – no sales last 10 yrs | $ 0.00 |
| Tax Refunds – Carry forward est. overpayment 2023 | $ 38,473.00 |
| Erie Insurance for roof damage | $14,181.17 (Erie payment was forwarded to the Subchapter V Trustee) |

Debtor expects to employ an auctioneer to sell the 2012 Porsche Panamera and the 2017 Maserati.

If timely filed claims are allowed in the amount filed, the total for allowed general unsecured claims is $3,512,932.36.

The sale of the non-exempt property of the estate (other than carry forward estimated federal tax overpayment and the Debtor's survivorship interest in 2261 Bullock Hollow Road) for values assigned by the Debtor, would generate $266,357.00, less sale expenses. The sum of $266,357.00 and $831,289.68 is $1,097,646.68. Deducting $90,000.00 for the priority DSO claim leaves $1,007,646.68.

If timely filed claims are allowed in the amount filed, not considering administrative costs and expenses, the dividend would be approximately 29¢ on the dollar, plus any amount realized from the illiquid investments. Considering only a Chapter 7 Trustee commission ($56,179), the dividend would be reduced to 27¢ on the dollar.

4

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 3, 2025, the foregoing "**Plan of Reorganization, Dated June 3, 2025**" was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to Tiffany A. DiIorio, Andrew Wesley Hogan, Eric W. Reecher, M. Aaron Spencer, Anthony R. Steele, Walter N. Winchester and the United States Trustee.

Additionally, copies of "**Plan of Reorganization, Dated June 3, 2025**" were served on June 3, 2025, by first class mail with sufficient postage prepaid and addressed as follows:

| | |
|---|---|
| Internal Revenue Service<br>Centralized Insolvency Operations<br>P.O. Box 7346<br>Philadelphia, PA  19101-7346 | United States Attorney's Office<br>Howard H. Baker, Jr. U.S. Courthouse<br>800 Market Street, Suite 211<br>Knoxville, TN  37902-2342 |

*/s/ Maurice K. Guinn*
Maurice K. Guinn

*Certificate of Service for Plan of Reorganization (6/3/2025)*