# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARETE WEALTH, INC.,

          Plaintiff,

    v.

JACK R. THACKER,

          Defendant.

Case No. 24-CV-2191

## DEFENDANT JACK THACKER'S MEMORANDUM
## IN SUPPORT OF HIS MOTION TO DISMISS

Defendant Jack R. Thacker moves this Court to dismiss Plaintiff Arete Wealth, Inc.'s Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) for failing to state a claim upon which relief can be granted and failing to plead the circumstances constituting fraud with particularity.

# EXHIBIT C

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...........................................................................................................1

PLAINTIFF'S ALLEGATIONS .....................................................................................2

LEGAL STANDARD .....................................................................................................5

ARGUMENT ..................................................................................................................6

    I.    The Complaint Fails To State A Claim For Fraudulent Inducement................................6

        A.    A Breach Of Contract Does Not Constitute Fraud. ....................................6

        B.    Post-Close Arbitration Proceedings Are Not Liabilities Under The SPA. .............8

        C.    The Amended Complaint Fails To Allege Key Elements Of Fraud. .....................9

            1.    The Complaint Fails To State A Fraudulent Misrepresentation Claim..................................................................................10

            2.    Arete Fails to Allege a Fraudulent Concealment Claim. ..............................11

        D.    The Amended Complaint Fails To Satisfy Rule 9(b)'s Pleading Standard. .........14

    II.    Count II – Arete's "Alternative" Breach Of Contract Claim .........................................16

    III.    Count III – Arete's Indemnification Claim Fails. ..........................................................17

CONCLUSION ................................................................................................17

# EXHIBIT C

## TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................................... 2, 5

*Avery v. State Farm Mut. Auto. Ins. Co.,*
   835 N.E.2d 801, 216 Ill.2d 100 (Ill. 2005) ................................................................ 6, 7

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ......................................................................................................... 5

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
   761 F.3d 732 (7th Cir. 2014) ................................................................................. 14, 17

*Com'ty Bank of Trenton v. Schnuck Markets, Inc.,*
   887 F.3d 803 (7th Cir. 2018) ........................................................................................ 8

*Commercial Nat'l Bank of Peoria v. FDIC.,*
   131 Ill. App. 3d 977, 476 N.E.2d 809 (Ill. App. 1985) .............................................. 13

*Cross v. Batterson,*
   No. 17 C 198, 2017 WL 2798398 (N.D. Ill. June 28, 2017) ........................................ 7

*D'Attomo v. Baumbeck,*
   36 N.E.3d 892 IL App (2d) 140865 (2015) ................................................... 10, 13, 14

*Devco v. T10 Meltel, LLC,*
   237 F. Supp. 3d 804 (N.D. Ill. 2017) ........................................................................... 2

*Dvorkin v. Soderquist,*
   208 N.E.3d 445, 465, 2022 IL App (1st) 201368 (2022) ........................................... 13

*Energy Intelligence Group, Inc. v. Constellation Energy Generation, LLC,*
   2022 WL 865821 (N.D. Ill. Mar. 23, 2022) ................................................................. 9

*Greenberger v. GEICO Gen. Ins. Co.,*
   631 F.3d 392 (7th Cir. 2011) .................................................................................... 6, 7

*Hicks v City of Des Plaines,*
   2015 WL 5084636 (Ill. App. Aug. 27, 2015) .............................................................. 9

*Medcom Holding Co. v. Baxter Travenol Labs, Inc.,*
   984 F.2d 223 (7th Cir. 1993) ................................................................................... 8, 9

*Mullen v. GLV, Inc.,*
   488 F. Supp. 3d 695 (N.D. Ill. 2020) ........................................................................ 13

# EXHIBIT C

*Nelson v. Great Lakes Educ. Loan Servs., Inc.*,
  928 F.3d 639 (7th Cir. 2019) ................................................................. 9

*Patriot Group, LLC v. Hilco Fin., LLC*,
  No. 1-17-0345, 2018 WL 4603912 (Ill. App. Sept. 20, 2018) .................. 7, 8, 13, 14

*Putzier v. Ace Hardware Corp.*,
  50 F. Supp. 3d 964 (N.D. Ill. 2014)........................................................ 12

*Ray v. R.A. Mech., Inc.*,
  No. 1-22-1639, 2023 WL 8622388 (Ill. App. Dec. 13, 2023)................... 7, 15

*Rodriguez v. Ford Motor Co.*,
  596 F. Supp. 3d 1050 (N.D. Ill. 2022) ................................................... 12

*Toulon v. Cont'l Cas. Co.*,
  877 F.3d 725 (7th Cir. 2017) ................................................................. 6, 14

*Vergara v. City of Chicago*,
  939 F.3d 882 (7th Cir. 2019) ................................................................. 17

*Wexler v. Chubb Nat'l Ins. Co.*,
  No. 21 CV 2543, 2022 WL 279571 (N.D. Ill. Jan. 31, 2022) ................... 8

*Zankle v. Queen Anne Landscaping*,
  724 N.E.2d 988, Ill. App.3d 308 (2000) ................................................ 7

## Statutes, Rules & Regulations

17 CFR § 240-15I-1................................................................................. 4, 16

17 CFR § 240.15c3-1I(1) ......................................................................... 11

17 CFR § 240.15c3-1I(2) ......................................................................... 11

Fed. R. Civ. P. 9(b) ................................................................................. 1, 5, 14, 15

Fed. R. Civ. P. 12(b)(6) ........................................................................... 5

## Other Authorities

Black's Law Dictionary – LIABILITY (11th ed. 2019) ................................. 10

FINRA Broker Check Report for David Escarcega,
  https://files.brokercheck.finra.org/individual/individual_4367584.pdf..................... 4

# EXHIBIT C

### *Introduction*

Plaintiff Arete Wealth, Inc. purchased Center Street Securities from Defendant Jack Thacker pursuant to a December 2020 stock purchase agreement (the "SPA"). In a transparent effort to bypass the constraints of the SPA and its limited recourse for post-closing customer arbitration demands, Arete filed suit, claiming Thacker fraudulently induced it to purchase Center Street by misrepresenting its potential future liabilities. Alternatively, Arete alleges that Thacker's failure to disclose those liabilities breached the SPA. Thacker moved to dismiss Arete's Complaint, which responded by filing an Amended Complaint that attempts to wordsmith around the flaws in his allegations. Ultimately, the Amended Complaint fairs no better than its predecessor.

Arete's amended fraud claim (still) suffers from a litany of fundamental failings that necessitate dismissal. *First*, the fraud claim is indistinguishable from Arete's "alternative" contract claim. *Second*, the post-sale arbitration demands upon which Arete bases its claim are not "Liabilities" that had to be disclosed in the SPA. *Third*, Arete's allegations are predicated on the erroneous premise that Thacker can be held liable for concealing obligations that did not yet exist and were thus unknown. *Fourth*, Arete fails to allege Thacker knowingly made affirmative false or misleading statements that induced Arete to purchase Center Street. *Finally*, the Complaint fails to allege particularized facts sufficient to plead fraud under Rule 9(b).

Arete's "alternative" claims for breach of contract and indemnification are premised on a fundamental misreading of the SPA. The post-sale arbitration demands alleged against Center Street constitute "Legacy Arbitrations" and not "Liabilities" under that agreement. Even if those arbitrations could be recast as "Liabilities," Thacker still cannot be held liable for not disclosing those future claims because the SPA only required he disclose "Liabilities" ***as of the date*** of the agreement. Finally, any claim brought under the SPA's other representation and warranties provisions is barred by a contractual limitations provision.

# EXHIBIT C

### *Plaintiff's Allegations*[1]

Arete's predecessor-in-interest, Old Growth Capital, LLC, purchased Center Street from

Thacker through the purchase of Center Street's holding company, Center Street Holdings, Inc.

("CS Holdings"). Am. Compl. ¶¶ 1, 5, 11, 16.[2] In Article III of the SPA, Thacker made certain

representations and warranties that he affirmed were "true and correct **as of the date**" of the SPA.

Art. III (emphasis added). Those representations included an assurance that:

> [Center Street and its affiliates] have no Liabilities except (a) those which are
> adequately reflected or reserved against in the Balance Sheet as of the Balance
> Sheet Date, and (b) those which have been incurred in the ordinary course of
> business consistent with past practice since the Balance Sheet Date and which are
> not, individually or in the aggregate, material in amount.

SPA § 3.06(a); Am. Compl. ¶ 19. Thacker also represented that:

> [The SPA's] Disclosure Schedules accurately and completely describe[] all Legacy
> Arbitrations involving the Companies … [and] [o]ther than the Legacy
> Arbitrations, there are no Actions pending or, to Seller's Knowledge, threatened
> against or by the Seller, or any of the Companies[]…. No event has occurred or
> circumstances exist that may give rise to, or serve as a basis for, any such Action.

SPA § 3.13(a) & (b). Thacker also affirmed that none of the representations or warranties in the

SPA "contain[] any untrue statement of material fact, or omit[] to state a material fact necessary

to make the statements contained therein… not misleading." SPA § 3.24.[3]

The SPA defined the terms used in these provisions as follows:

> "**Liabilities**" (or "Liability") means any liability, commitment or obligation
> (whether known or unknown, whether asserted or unasserted, whether absolute or
> contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and

---

[1] Thacker accepts the factual allegations in Arete's Amended Complaint as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The SPA, which Arete attached and incorporated into the Amended Complaint, is considered part of the pleadings. *See* Am. Compl. ¶ 9, Ex. A; *Devco v. T10 Meltel, LLC*, 237 F. Supp. 3d 804, 811, n.6 (N.D. Ill. 2017).

[2] For purposes of this motion, references to Arete also refer to Old Growth, where applicable.

[3] The SPA further provides that Arete could "rely fully upon the representations, warranties, covenants and… Disclosure Schedules" in the SPA. *See* SPA § 8.03(f).

# EXHIBIT C

whether due or to become due).

"**Losses**" means losses, damages, Liabilities, deficiencies, Actions, judgments . . . or expenses of whatever kind….

"**Action**" means any claim, action, cause of action, demand, lawsuit, arbitration (including before FINRA), inquiry, audit, notice of violation, proceeding, litigation, citation, summons, subpoena or investigation of any nature….

"**Legacy Arbitrations**" means all FINRA or other arbitrations, or any ancillary Actions relating thereto … whether threatened, pending or pursued at some future date (including after Closing), brought by any Person in connection with, in whole or in part, such Person's purchase or ownership of any investment products sold by [Center Street]….

"**Post-Closing Litigation Matters**" means any Action involving the Companies (other than the Legacy Arbitrations), threatened or asserted after the Closing….

SPA, Art. I. (emphasis in original).[4]

Pursuant to SPA § 8.01(a), Thacker agreed to indemnify Arete for: (1) Losses resulting from the "breach or any inaccuracy of any of the warranties or representations"; and (2) Legacy Arbitration Losses and Post-Closing Litigation Losses. *See* SPA § 8.01(a)(i) & (iv).[5] However, the SPA also set a cap on that indemnification, limiting Thacker's liability for any representation and warranty breach to $1 million, and setting a 2-year limitations period for such claims. *See* SPA § 8.03(a) & (b)(i). However, these limitations do not apply to breaches of certain "Fundamental Representations," including Section 3.06's statement concerning Liabilities. *Id.*[6]

As was the case with Arete's original Complaint, the Amended Complaint relies on a single supposed misrepresentation—namely, the assurance in SPA § 3.06 that Center Street's Liabilities

---

[4] Capitalized terms used in this brief refer to the definitions applied to those terms in the SPA.

[5] "**Legacy Arbitration Losses**" means "all Losses, actually incurred or sustained by the Buyer Indemnified Parties, arising out of or relating to, in whole or in part, the Legacy Arbitrations." "**Post-Closing Litigation Losses**" means "all Losses actually incurred or sustained by any Buyer Indemnified Parties arising out of or relating to the Post-Closing Litigation Matters." SPA, Art. I.

[6] An indemnification claim for a breach of a Fundamental Representations may be asserted for 6 years after closing and have an expanded $5 million cap. *See* SPA § 8.03(a) & (b)(i).

# EXHIBIT C

were reflected on its balance sheet. Am. Compl. ¶¶ 2, 7-9, 19. Arete claims this representation was "knowingly false and/or otherwise omitted material facts" because Thacker knew Center Street's "serial improper business practices were [SPA] Liabilities." *Id.* ¶ 22.[7] According to Arete, Thacker was aware that Center Street had failed to develop, implement, and/or maintain adequate supervisory procedures to comply with the securities laws and FINRA rules, including SEC Regulation Best Interest, 17 CFR § 240-15I-1 ("Reg BI"). He claims those alleged compliance inadequacies constituted Liabilities under the SPA. *Id.* ¶¶ 23-25, 40-41, 52-56.

Arete's original Complaint generally alleged that Center Street employees "engaged in dubious or illegal sales practices," including by "willfully making fraudulent misrepresentations when they solicited ... customers to invest in alternative investment products." Compl. ¶ 24. The Amended Complaint attempts to personify that conduct, referencing the acts of David Escarcega, a former employee who was barred by FINRA's National Adjudicatory Council ("NAC") almost *3½ years before* the SPA for, *inter alia*, "willfully making fraudulent misrepresentations when he solicited [Center Street's] customers to invest in certain debenture bonds ("GWG debentures")." Am. Compl. ¶ 26; *see id.* ¶ 28-30. Arete claims Thacker knew of but did not disclose this dated, publicly-disclosed proceeding. *Id.* ¶ 34.[8] It further alleges Thacker knew Center Street's protocols had failed to prevent Escarcega from bypassing supervisory oversight and selling unsuitable debentures. *Id.* ¶ 35. The Amended Complaint also asserts that Thacker knew Center Street had sold and renewed unsuitable alternative investment products in contravention of company rules, *see id.* ¶¶ 35, 37-43, and engaged in other noncompliant practices. For example, it alleges:

---

[7] Arete tries to expand the scope of its claim by alleging that the supposed misrepresentation regarding Liabilities implicated additional, yet unspecified contractual warranties. Am Compl. ¶ 77.

[8] FINRA disciplinary matters are publicly reported. *See, e.g.*, https://files.brokercheck.finra.org/individual/ individual_4367584.pdf (*last visited* July 29, 2024) (FINRA BrokerCheck Report for David Escarcega).

# EXHIBIT C

- Center Street had "House Accounts" that were not serviced or monitored; *id.* ¶ 45;

- Center Street failed to warn customers that "GPB Capital Holdings ('GPB')—had failed to make public financial disclosures in a timely manner;" *id.* ¶ 47; and

- Center Street had clients invest in a real estate investment trust that was "a troubled investment" that had been sold to "unsuitable investors." *Id.* ¶¶ 48-50.

Arete characterizes all these alleged compliance failures as SPA "Liabilities."

Arete contends that although "Thacker was aware of [such] Liabilities," he "affirmatively misrepresented [their] existence" to induce Arete to purchase Center Street. *Id.* ¶¶ 51-53, 56. According to Arete, these alleged compliance shortfalls ultimately resulted in over 50 former Center Street customers filing post-sale arbitrations concerning "the sale of GWG debentures and other unsuitable alternative investment products." *Id.* ¶ 65.[9]

## ***Legal Standard***

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a court accepts a complaint's allegations as true when assessing a motion to dismiss, mere "legal conclusions," "threadbare recitals of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement" "are not entitled to the assumption of truth." *Id.* at 678-79 (cleaned up). Similarly, facts that "merely create[] a suspicion" of "a legally cognizable right of action" do not satisfy Rule 12(b)(6). *Twombly*, 550 U.S. at 555 (citation omitted). A complaint alleging fraud must also satisfy Rule 9(b)'s heightened pleading standard. Fed. R. Civ. P. 9(b). This requires a plaintiff to describe "the who, what, when, where, and how of the fraud." *Toulon*

---

[9] The Amended Complaint identifies two of those clients, both of whom demanded arbitration *years after* Arete purchased Center Street. *Id.* ¶¶ 36, 46.

# EXHIBIT C

*v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017). Finally, the SPA—and thus Arete's claims—are governed by Illinois law. SPA § 10.10(a).

## *Argument*

Like Arete's original pleading, the Amended Complaint ultimately alleges a single purported misrepresentation—Thacker's assurance that Center Street's "Liabilities" (as that term is defined in the SPA) were reflected on its balance sheet. Am. Compl. ¶¶ 2, 7-9, 19. Arete's original Complaint vaguely alleged that Thacker failed to disclose issues with Center Street's internal supervisory systems, which it claimed constituted or "gave rise to" those Liabilities. Compl. ¶¶ 8, 32. The Amended Complaint attempts to bolster that claim, asserting additional allegations that Thacker was aware of Center Street's supposed compliance failings.

In tacit recognition that the Complaint failed to allege a claim for fraudulent concealment, Arete attempts to recast those accusations as affirmative misrepresentations. Although substituting "misrepresentation" for the numerous variants of "nondisclosure" used in the original Complaint, the Amended Complaint's wordsmithing does not save Arete's claims. That is because, at bottom, Arete's flawed legal theory remains the same. It still claims that Thacker's supposed failure to disclose Center Street's allegedly noncompliant sales practices constituted "Liabilities" under the SPA and that Thacker fraudulently induced Arete to purchase Center Street by: (1) assuring Arete that Center Street's Liabilities were accounted for on its balance sheet; and/or (2) not disclosing those alleged Liabilities in the company's books.

## I.     The Complaint Fails To State A Claim For Fraudulent Inducement.

### A.     A Breach Of Contract Does Not Constitute Fraud.

In Illinois, "fraud claims must contain something more than reformulated allegations of a contractual breach." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 395 (7th Cir. 2011) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844, 216 Ill.2d 100 (Ill. 2005)).

# EXHIBIT C

"[A] breach of contractual promise, without more, is not actionable" as fraud. *Avery*, 835 N.E.2d at 844; *see also Ray v. R.A. Mech., Inc.*, No. 1-22-1639, 2023 WL 8622388, at *7-8 (Ill. App. Dec. 13, 2023) ("[P]laintiff's allegations sound in breach of contract, which under well-established precedent do not amount to common law fraud."). Thus, to bring a claim outside the ambit of the SPA, Arete must allege a fraudulent representation or omission that is "separate and independent of [its] breach of contract claim." *Patriot Group, LLC v. Hilco Fin., LLC*, No. 1-17-0345, 2018 WL 4603912, *4 (Ill. App. Sept. 20, 2018). "[A] 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract." *Avery*, 835 N.E.2d at 844 (quoting *Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988, 993, Ill. App.3d 308 (2000)).

Arete alleges that because Center Street was likely to incur future liabilities as a result of its sale of unsuitable investment products, Thacker's contractual representation that Center Street had no undisclosed Liabilities was "knowingly false" and/or "materially incomplete." Am. Compl. ¶¶ 22, 69-70.[10] But a claim that Thacker knowingly breached an SPA representation is not "separate and independent" from a breach of contract claim and characterizing a breach as "knowingly" does not alter the analysis. *See Cross v. Batterson*, No. 17 C 198, 2017 WL 2798398, *5 (N.D. Ill. June 28, 2017) ("[S]imply put, since even an intentional, knowing, wanton, or malicious breach of contract is still a breach of contract, such a breach done surreptitiously is not fraud." (internal quotation omitted)). To the contrary, Arete's tort and contract claims are indistinguishable. *Greenberger*, 631 F.3d at 399. The Amended Complaint acknowledges the overlap, pleading the same facts for both fraud and breach of contract.

---

[10] The Amended Complaint tries to bolster this claim by also alleging that Thacker failed to disclose Center Street's compliance failures, which it then characterizes as Liabilities. Am. Compl. ¶¶ 8, 22.

# EXHIBIT C

Finally, Arete's fraud claim also fails because it only pleads losses arising from the alleged breach of the SPA. "[I]njury from fraud must be more than just damages arising from a breach of contract." *Patriot Group, LLC*, 2018 WL 4603912, at *3. Arete claims that "CS Holdings' value (*i.e.*, the benefit of Arete's bargain with Thacker) has been  materially impacted by, *inter alia*, the Liabilities related to defending and resolving the pending arbitrations." Am. Compl. ¶ 66. Those allegations describe contract-related losses which the parties contemplated in the SPA. *See* SPA § 8.01(a)(iv) (providing remedy for Legacy Arbitration Losses and Post-Closing Litigation Losses). Arete's throwaway mention of "reputational" harm does not alter this analysis. Am. Compl. ¶¶ 2, 4, 59; *see* SPA § Art. I (defining Legacy Arbitration Losses and Losses).[11]

## B.    Post-Close Arbitration Proceedings Are Not Liabilities Under The SPA.

Arete alleges that Thacker committed fraud by failing to identify potential future customer claims as balance sheet Liabilities. The SPA, however, specifically addresses such potential claims; it identifies potential future customer arbitration demands as Legacy Arbitrations. *See* SPA, Art. I. Moreover, Thacker specifically disavowed making any representations concerning such future potential claims in the SPA. *See* SPA § 3.13(b) ("*Other than the Legacy Arbitrations*, there are no Actions pending or, to Seller's Knowledge, threatened against or by the Seller, or any of the Companies." (emphasis added)).

It is black letter law that contracts should be construed "so that each provision or clause is given full force and effect and so that the terms make sense when read together." *Medcom Holding*

---

[11]  Arete's claim is also barred by Illinois's economic loss doctrine, which precludes a party from alleging a tort claim "for purely economic losses inflicted by one business to another where those business have already ordered their duties, rights, and remedies by contract." *Com'ty Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 812 (7th Cir. 2018). "Stated another way, a plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial transaction is generally limited to any remedies it may have under a contract and cannot recover in tort." *Wexler v. Chubb Nat'l Ins. Co.*, No. 21 CV 2543, 2022 WL 279571, *5 (N.D. Ill. Jan. 31, 2022) (quotation omitted).

# EXHIBIT C

*Co. v. Baxter Travenol Labs, Inc.*, 984 F.2d 223, 227 (7th Cir. 1993). It is similarly well-settled

"that where a contract contains both general and specific provisions relating to the same subject,

the specific provision controls." *Id.* The specific SPA definition of Legacy Arbitrations thus

forecloses any attempt by Arete to characterize unknown, unaccrued future arbitration eligible

claims as Liabilities. *Hicks v City of Des Plaines*, 2015 WL 5084636, at *4 (Ill. App. Aug. 27,

2015) (contracts should be read "as a whole, viewing each part in relation to the others," and "so

that different provisions are in harmony, not conflict, with one another.").

### C. The Amended Complaint Fails To Allege Key Elements Of Fraud.

This Court should also dismiss Arete's fraudulent inducement claim because Arete fails to

plead the elements of fraud. "Fraudulent inducement is a form of common law fraud" that can

encompass both fraudulent misrepresentations and omissions. *Energy Intelligence Group, Inc. v.

Constellation Energy Generation, LLC*, 2022 WL 865821, at *4 (N.D. Ill. Mar. 23, 2022).[12]

To state a claim of fraudulent misrepresentation, a plaintiff must allege: "(1) a false statement of

material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the

plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and

(5) damage to the plaintiff resulting from such reliance." *Id.* at *4 (citation omitted). Fraudulent

concealment requires a plaintiff to allege: "(1) The defendant concealed a material fact under

circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3)

the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was

prevented from making a reasonable inquiry or inspection, and justifiably relied upon the

defendant's silence as a representation that the fact did not exist; (4) the concealed information

---

[12] Claims for fraudulent misrepresentation and omission require a plaintiff to establish different elements.
Arete must independently and adequately plead at least one to prove fraudulent inducement. *See Nelson v.
Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 649 (7th Cir. 2019).

# EXHIBIT C

was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages." *D'Attomo v. Baumbeck*, 36 N.E.3d 892, 912, 2015 IL App (2d) 140865 (2015). The Amended Complaint alleges a single misrepresentation—Thacker's representation that Center Street had no undisclosed Liabilities. Am. Compl. ¶ 8. This allegation cannot support Arete's fraud claim.

### 1.    The Complaint Fails To State A Fraudulent Misrepresentation Claim.

Arete's Amended Complaint attempts to center its fraud claim on the contention that Thacker "knew he had misrepresented the extent of [Center Street's] 'Liabilities' . . . because he had failed to provide material information regarding improper business practices of [Center Street]." *Id.* ¶¶ 8, 69. This claim fails at its first element—alleging a false statement.

Arete's claim is predicated on the assertion that Thacker knew Center Street was subject to unknown, unasserted Liabilities—*i.e.*, *future* arbitration demands. *See, e.g.*, Am. Compl. ¶ 2-3 (failure to disclose compliance issues "was a significant Liability given the likelihood of civil liability, regulatory penalties, and reputational damage arising from this prior culture of non-compliance"); *id.* ¶ 4 ("prior culture of noncompliance . . . has *given rise* to an onslaught of costly arbitrations" (emphasis added)); *id.* ¶8 ("[T]hese improper sales practices were significant Liabilities because . . . they *exposed* [Center Street] to ... liability" (emphasis added)); *id.* ¶ 42 (Thacker knew Center Street's sales practices had created "the risk of loss of [sic] these customers would remain after Arete acquired [the company]"); *id.* ¶ 50 (Thacker had "knowledge of the *likely exposure* arising" from alleged improper sales practices (emphasis added)). Arete alleges Thacker knew that Center Street's compliance failures created a *risk of suit*. However, the Amended Complaint does not identify an *existing* liability or obligation as that term is generally understood, *see* Black's Law Dictionary – LIABILITY (11th ed. 2019) (Defining liability as a "financial or pecuniary obligation in a specified amount"), or as defined in the accounting standards for

10

# EXHIBIT C

recording "liabilities" put forward by the SEC and FINRA for brokers/dealers like Center Street. *See* 17 CFR § 240.15c3-1I(1) & (2) (the "Net Capital Rule") and interpretations thereunder, including SEC Staff Guidance to NYSE, No. 81-9 (February 1981). In fact, FINRA has published guidance (based on SEC letters and releases) under the Net Capital Rule which holds that legal actions against brokers / dealers should be accounted as "contingent liabilities" booked against net capital when: (1) a suit has been initiated; and (2) "occurrence of a loss is probable and the amount can be reasonably estimated." *See* SEA Rules 15c3-1I(2)/0110 (Lawsuits as Contingent Liabilities) & 0110 (Guarantees and Contingencies).

Importantly, the Amended Complaint explicitly acknowledges that the so-called Liabilities underlying Arete's claims did not exist when the parties entered the SPA. In explaining why Arete was unaware of supposed compliance issues at Center Street, the Amended Complaint alleges that "[Center Street's] improper business practices were not readily apparent because, *at that time the parties entered the SPA, positive market conditions concealed the true effects of [Center Street's] culture of non-compliance*." Am. Compl. ¶ 59 (emphasis added). Put differently, at the time the parties entered into the SPA, the Liabilities upon which Arete bases all its claims *did not exist* because the subject investments had a positive value. For obvious reasons, Thacker cannot be held liable for failing to predict a market downturn so as to characterize then "positive" customer investments as current balance sheet losses. Because any definition of liability encapsulates an existing or expected duty to pay, the SPA's definition cannot include the mere risk of some potential future suit. Thacker's Section 3.06 representation was thus accurate and Arete's fraud claim fails.

## 2.    Arete Fails to Allege a Fraudulent Concealment Claim.

Arete's concealment claim fails for comparable reasons—namely, "a party cannot fraudulently conceal information that it does not know." *Abazari v. Rosalind Franklin Univ. of*

# EXHIBIT C

*Med. & Sci.*, 40 N.E.3d 264, 274, 2015 IL App (2d) 1409052 (2015). Arete does not allege Thacker knew of any specific liability at the time of the SPA. Rather, it claims that Thacker knew that a breakdown of its internal policies had exposed Center Street to a "risk of loss" from potential future claims. Am. Compl. ¶¶ 2, 8-9, 25, 42, 46. Put differently, the Amended Complaint does not allege Thacker knew, yet failed to disclose, an existing liability as that term is understood in everyday parlance, by FINRA, or as defined by the SPA. *See supra*. Instead, it assails Center Street's operations to suggest that Thacker knew the company could be at risk if future market changes led to customer losses. Though the Amended Complaint adds allegations of Thacker's purported knowledge of undisclosed, non-compliant product sales, it still does not solve the failing of the original Complaint—the facts Arete claims Thacker knew but did not disclose are not Liabilities. While parties may contract to assign liability for unknown future obligations—as the parties did here—a defendant cannot be held *liable for fraud* for not accurately foreseeing the future. *Cf. Abazari*, 40 N.E.3d at 274. Stated differently, while Arete's Amended Complaint lists information Thacker purportedly "knew," none of it constituted *existing* Liabilities.

Arete's concealment claim also fails to allege facts that would impose a duty to disclose the omitted information. Such a duty exists when "the plaintiff and the defendant are in a fiduciary," "confidential," or some other "special trust relationship." *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1058 (N.D. Ill. 2022) (citation omitted). "[A]rm's-length contractual relationships" do not create a duty to disclose "merely because the parties owe each other contractual duties." *Putzier v. Ace Hardware Corp.*, 50 F. Supp. 3d 964, 979 (N.D. Ill. 2014).

Arete attempts to address this shortcoming by alleging that Thacker had a "duty to disclose" the compliance issues alleged in the Amended Complaint "as part of the SPA." Am. Compl. ¶ 57; *see id.* ¶¶ 20-21. The Amended Complaint, however, does not articulate a basis

for that alleged duty other than the contract itself. Parties are not placed in a fiduciary or special trust relationship simply by virtue of a contractual assertion that they may rely on contractual disclosure obligations. Put differently, the Amended Complaint's references to the SPA's disclosure provisions do not create an independent, non-contractual fiduciary obligation.

The assertion that Thacker owed Arete fiduciary obligations *after* the sale when Thacker became an Arete officer also does not support Arete's claims. Am. Compl. ¶¶ 61-64. Fraudulent *inducement* occurs because of a party's misrepresentations or concealment *before* the parties' contractual arrangement. Regardless of his role, Thacker's post-sale responsibilities could not and did not create a retroactive pre-close obligation.

Arete similarly fails to plead that it "could not have discovered the truth through reasonable inquiry or inspection" and that it justifiably relied on Thacker's silence. *D'Attomo*, 36 N.E.3d at 912. "A party is not justified in relying on representations made when ample opportunity exists to ascertain the truth of the representations." *Patriot Group, LLC*, 2018 WL 4603912, at *5 (quoting *Commercial Nat'l Bank of Peoria v. FDIC.*, 131 Ill. App. 3d 977, 983, 476 N.E.2d 809 (Ill. App. 1985)). To maintain a cause of action for fraud, a plaintiff "must allege facts sufficient to establish" that its reliance was reasonable "in light of all the facts the plaintiff knew and the facts the plaintiff could have learned by exercising ordinary prudence." *Dvorkin v. Soderquist*, 208 N.E.3d 445, 465, 2022 IL App (1st) 201368 (2022).

The Amended Complaint does not allege that Thacker made any misleading statements regarding Center Street's compliance program or its customer investment portfolios or that Arete was precluded from inquiring about the company's compliance program or its customers during pre-sale due diligence. *See Mullen v. GLV, Inc.*, 488 F. Supp. 3d 695, (N.D. Ill. 2020) ("If the party's reliance is unreasonable in light of the information open to him, the loss is considered his

own responsibility." (cleaned up)); *D'Attomo*, 36 N.E.3d at 913 (dismissing complaint because plaintiffs failed to allege they "could not have discovered the truth through reasonable inquiry or inspection"). Arete similarly does not allege facts establishing justifiable reliance.[13] To the contrary, the alleged facts reflect that Arete was aware of potential customer arbitration demands— the parties specifically accounted for the risk of such claims in the SPA. *See* SPA, Art. I. (defining Legacy Arbitrations as "FINRA or other arbitrations, or other ancillary Actions... whether threatened, pending or pursued at some future date (including after Closing), brought by any Person in connection with... investment products sold by [Center Street]").

Moreover, the Amended Complaint now alleges that Arete "reasonabl[y] investigat[ed]" Center Street's compliance program. Putting aside the self-serving characterization of its inquiry, Arete admits that it conducted its own investigation. Arete nonetheless argues that Thacker remains liable because the SPA disavowed diligence as a defense to a breach of the SPA's representation and warranties. Am. Compl. ¶ 20. That provision does not negate the element of reliance for a breach of contract claim, which remains unsatisfied by the Amended Complaint.

### D.   The Amended Complaint Fails To Satisfy Rule 9(b)'s Pleading Standard.

The Court must also dismiss Arete's fraud claim because it fails to allege "the who, what, when, where, and how of the fraud." *Toulon*, 877 F.3d at 734 (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014)). The Amended Complaint alleges that Center Street's compliance failures constituted Liabilities because it sold alternative investment products to unsuitable customers. Am. Compl. ¶¶ 4, 37, 56. Many of the Amended Complaint's listed

---

[13] Although Arete claims it was "permitted to rely on Thacker's warranties and other disclosures"— presumably because Section 8.03(f) stated that a party could "rely fully upon the representations" regardless of that party's investigation and/or factual knowledge—the SPA's terms do not negate the elements that Arete must plead to state a claim for fraud. "A person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another." *Patriot Group, LLC*, 2018 WL 4603912, at *5 (cleaned up).

examples—*e.g.*, investments in GPB Capital Holdings, and/or a REIT offered by Legendary Capital ("LC Lodging")—fail to allege facts relating to the sales of those products. *Id.* ¶¶ 46-49. The Amended Complaint does not allege when these products were sold, the customers who purchased them, why they were inappropriate investment products, how their sale violated Center Street's compliance rules, or how the company ultimately incurred Losses as a result.

Arete's newly added allegations concerning Escarcega's sale of GWG debentures also fall short of Rule 9(b)'s pleading standards. The Amended Complaint does not describe when or to whom Escarcega sold the debentures or why those sales were problematic *ab initio*. The pleading also does not indicate whether or when those investments were renewed (including whether or not any were renewed after the SPA). Although Arete identifies two customers who complained about the suitability of their investments, it does not provide details regarding their claims or why neither investor asserted a complaint against Center Street until 2022—well after the company's 2020 sale. Am. Compl. ¶¶ 36, 46. Moreover, the Amended Complaint fails to allege that any of these investment products had diminished in value at the time of the SPA. In fact, it suggests the opposite. *See* Am. Compl. ¶ 59 (referencing "positive market conditions"). Finally, the Amended Complaint fails to identify the specific future Liabilities that should have been quantified on Center Street's balance sheet or how they should have been quantified.

To the extent Arete's fraud claim is predicated on Center Street's purported compliance oversights, it fails to identify or describe the procedures at issue, including what those policies should have required, how they failed, or their connection to the supposed Liabilities. *Ray*, 2023 WL 8622388, at *7 ("[F]acts from which fraud is the necessary or probable inference" must be alleged with particularity). For instance, Arete claims Center Street's compliance program failed to abide by Reg BI, which only came into effect in June 2020 (long after Escarcega was disbarred).

# EXHIBIT C

Am. Compl. ¶¶ 40-41. Yet, the Complaint fails to identify what transactions occurred in the 6-month period between Reg BI's effective date and the SPA.

## II.    Count II – Arete's "Alternative" Breach Of Contract Claim

Alternatively, Arete claims that Thacker "knowingly breached" SPA § 3.06 and other unspecified "express warranties" when he represented that Center Street had no undisclosed Liabilities. Am. Compl. ¶ 77. As discussed, while the SPA may have expanded that traditional definition of a liability, it does not encompass future, unknown contingent claims of indeterminate value that may or may not ever be asserted and which may or may not have legitimacy. If the recent arbitration proceedings alleged against Center Street could be characterized as Section 3.06 Liabilities—which they cannot—Thacker is still not liable for breach of contract because he represented only that Center Street had no additional Liabilities *as of the date* of company's sale. SPA, Art. III. While the Amended Complaint claims Thacker knew of Center Street's compliance program shortfalls and certain customer complaints, it does not allege that any actual, quantifiable Liabilities existed at the time of sale.[14]

Finally, despite Arete's efforts to broaden its claims to include the supposed breach of certain unspecified "express warranties," its breach of contract claim still ultimately relies on the assertion that Thacker failed to disclose Center Street's Liabilities, an alleged breach of Section 3.06's representation.[15] To the extent that the Amended Complaint tries to recast Arete's breach of contract claim to include other SPA representations, that claim is barred by the parties' contractual limitations period.  As noted above, the SPA required Arete to bring any claim under

---

[14] The Court should further reject Arete's breach of contract claim to the extent it attempts to recast Section 3.06 as an indemnification of future potential claims. The SPA already provides indemnification, including for the Legacy Arbitration obligations outlined in Section 3.13.

[15] The suggestion that Thacker breached SPA § 3.24 by "omit[ing] material facts" about Center Street's "Liabilities" is just another allegation that Thacker breached § 3.06. *See* Am. Compl. ¶ 22.

## EXHIBIT C

the SPA's representation and warranties provisions within two years of the closing. *See* SPA § 8.03(a) (providing that "[a]ll representations and warranties made hereunder … shall survive the Closing for a period of twenty four (24) months"). Because any supposed breach of the other unstated "express warranties" refenced in the Amended Complaint are time-barred, the Court should dismiss that claim. *Cf. Vergara v. City of Chicago*, 939 F.3d 882, 886 (7th Cir. 2019) (dismissing complaint based on statute of limitations defense).

Finally, Arete's breach of contract claim alleges that Thacker "concealed and otherwise failed to disclose these breaches" after the closing. *Id.* ¶ 78. If Thacker had breached the parties' agreement—and he did not—Thacker's failure to disclose those supposed breaches is not a separate and independent transgression of the SPA.

## III.    Count III – Arete's Indemnification Claim Fails.

Finally, this Court should dismiss Arete's indemnification claim, which suffers from the same failings as its contract claim. As noted above, the SPA provides that Thacker would indemnify Arete for "any and all Losses" incurred as a result of "any breach or inaccuracy" in his representations and warranties. However, because Arete has not pled a viable claim establishing that Thacker breached Section 3.06 (or any other timely SPA representation), its related indemnification claim must also be dismissed.

### *Conclusion*

WHEREFORE, Thacker requests that this Court dismiss Arete's Amended Complaint with prejudice. *See Camasta*, 761 F.3d at 734.

Dated: July 31, 2024                    Respectfully submitted,

*/s/ Joel M. Hammerman*
Joel M. Hammerman (ARDC No. 6243071)
**FAEGRE DRINKER BIDDLE & REATH LLP**
320 South Canal Street, Suite 3300
Chicago, IL 60606

**EXHIBIT C**

(312) 212 6500 / joel.hammerman@faegredrinker.com

## EXHIBIT C

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2024, I electronically filed the foregoing document with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system, which sent notification of such filing to the registered CM/ECF participants.

*/s/ Joel M. Hammerman*
Joel M. Hammerman (ARDC No. 6243071)
**FAEGRE DRINKER BIDDLE & REATH LLP**
320 South Canal Street, Suite 3300
Chicago, IL 60606
Tel: (312) 569-1000
Email: joel.hammerman@faegredrinker.com